*In re* DAWSETT.

1. PARDONS AND PAROLES—PAROLE A CONDITIONAL RELEASE.

The purpose of a parole is to keep a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime; it being a conditional release, and the condition being that if he makes good he will receive an absolute discharge from the balance of his sentence, but if not, he will be returned to serve his unexpired term.

2. SAME—ABSOLUTE DISCHARGE—RELEASE FROM PAROLE.

An absolute discharge to a prisoner on parole is something more than a release from the parole; it being a remission of the remaining portion of his sentence.

3. SAME—ABSOLUTE DISCHARGE—DELIVERY—ACCEPTANCE—REVOCATION.

An absolute discharge, like a pardon, is a gift from the governor, and, like any other gift, does not become effective until delivered and accepted; but after delivery it cannot be recalled.

4. SAME—STATUS OF PAROLEE SURRENDERED TO ANOTHER STATE UNDER COMPACT.

   The surrender of a parolee to authorities in another State, pursuant to statute authorizing compacts between States for mutual helpfulness in relation to persons convicted of crime and who are at large on probation or parole, is not in the nature of an extradition thereto, but the status is that the parolee's visitation and supervision are assumed by the receiving State (Act. No. 89, Pub. Acts 1935).

5. SAME—DELIVERY OF PAROLEE PURSUANT TO COMPACT—JURISDICTION.

   The delivery of a parolee to another State pursuant to compact between such other State and this one relative to transfer of parolees from one State to another, authorized by statute, does not constitute a relinquishment to such other State of jurisdiction by this State (Act No. 89, Pub. Acts 1935).

6. SAME—CUSTODY OF PAROLEE IN CORRECTIONS COMMISSION.

   A prisoner on parole remains in the legal custody and under the control of the State corrections commission and while in such custody is deemed to be serving the sentence imposed upon him (Act No. 255, chap. 3, § 8, Pub. Acts 1937).

7. SAME—PAROLEE DEEMED SERVING SENTENCE—GOOD TIME.

   A prisoner on parole is deemed to be still serving out the sentence imposed upon him by the court and is entitled to good time allowance the same as if he were confined in prison.

8. SAME—APPLICANT FOR PAROLE—RETURN FOR MISCONDUCT—STATUTES.

   A prisoner who applies for parole does so under the provisions of the law, agrees to the terms of the parole and may be recalled for misconduct, as provided in the statute, to serve out the term of sentence in confinement, the power of recall being lodged in the bureau of pardons and paroles (Act No. 255, chap. 3, § 1 *et seq.*, Pub. Acts 1937).

9. SAME—BURDEN OF SHOWING CONDITIONS OF PAROLE WERE MET.

   Parolee who was afforded a hearing upon alleged violation of parole and returned to prison and later paroled and returned three times more in the course of five years was properly confined for completion of sentence upon his failure to sustain burden of showing that the conditions of his parole have been met unless bureau of pardons and paroles should determine otherwise (Act No. 255, chap. 3, § 1 *et seq.*, Pub. Acts 1937).

Habeas corpus by William Dawsett to obtain release from State House of Correction and Branch Prison at Marquette with accompanying certiorari to Board of Pardons and Paroles. Submitted May 4, 1945. (Calendar No. 42,942.) Writ dismissed June 4, 1945.

*R. G. Leitch,* for petitioner.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Perry A. Maynard,* Assistants Attorney General, for defendants.

BUSHNELL, J. In this habeas corpus matter an ancillary writ of certiorari was issued directing the bureau of pardons and paroles of the department of corrections to certify its records in the matter of issuing a warrant for the arrest of the petitioner on January 20, 1942.

Petitioner William Dawsett was sentenced on June 7, 1934, in the circuit court for the county of Washtenaw, to a term of 2 to 14 years, upon his plea of guilty to the crime of forgery. On February 6, 1936, he was paroled to the warden of the Michigan State Prison for delivery to the sheriff of Cattaraugus county, New York, "if and when called for." He pleaded guilty when arraigned in the county court at Little Valley, New York, on the charge of grand larceny, alleged to have been committed May 25, 1934, at the city of Olean, for which crime he had been indicted on September 25, 1934. The New York court suspended sentence on condition that the defendant "meet the requirements imposed upon him by the Michigan parole board and upon the further condition that restitution be

made to Dr. Forbes of Olean for damages to a car in the sum of $85, with interest, to be paid on or before June 1, 1936.''

Subsequently Dawsett wrote a letter to the bureau addressed to Assistant Director A. Ross Pascoe, in which he advised the bureau of the New York conviction and suspended sentence; that he had an opportunity to be employed in Chicago which would enable him to comply with the requirements of the New York court, and he asked that reply be addressed to him at 2258 Clybourn street, Chicago, Illinois. On March 23d the supervisor of paroles, Ralph Benson, replied to this communication asking for further information, and Dawsett was informed that if he remained in Chicago he would have to be paroled to George Scully, superintendent of supervision, for a six months' period, with Lieut. Col. Habkirk of the Salvation Army acting as sponsor. On March 27th Dawsett wrote a letter to Benson stating that he would not be able to get in touch with Col. Habkirk, who was ill, that he planned to take a position in Texas and would keep supervisor Benson and Col. Habkirk informed. On April 10th Col. Habkirk reported to supervisor Benson that Dawsett had been interviewed by him, that he was then employed and desired permission to work outside the State of Illinois. On the same day this letter was written a new parole was issued naming George Scully, superintendent of supervision of parolees at Chicago, as Dawsett's ''first friend,'' and Scully was advised as to the history of the case. Scully was later authorized to permit Dawsett to travel outside the State under such stipulations as he might see fit to make. In June the bureau was advised by the sheriff of Cattaraugus county that information was desired as to Dawsett's where-

abouts. The authorities in Chicago were unable to locate Dawsett, he presumably having absconded from his Chicago parole.

On November 18, 1936, the bureau was advised by the chief parole officer of Detroit that Dawsett had received a sentence in the recorder's court of Detroit of 90 days in the Detroit House of Correction, upon conviction of larceny. Dawsett was returned to the State Prison on February 18, 1937, where, after a hearing, he was found guilty of violating his parole. He was again paroled on October 21, 1937, for one year and returned on August 10, 1939, because of a violation of this parole on August 31, 1938.

On March 26, 1941, he was paroled to Jackson county for 18 months, where he violated his parole on April 3, 1941, and was returned to prison on May 1, 1941. He was again paroled to Detroit for 18 months on December 23, 1941, and was returned to prison on February 4, 1942, for violation of this parole. He remained in the prison at Jackson until May 19, 1942, when he was transferred to the prison at Marquette, where he is now incarcerated.

He argues that he should now be released from custody because his original "release" to the State of New York constituted a complete relinquishment of jurisdiction by the State of Michigan, and that if it should be held that such release was conditional its conditions have been fulfilled. In support of this argument he cites numerous authorities from other jurisdictions, none of which is directly in point.

The court said in *Re Eddinger*, 236 Mich. 668, 670:

"The purpose of a parole is to keep the prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an oppor-

tunity to show that he can refrain from committing crime. It is a conditional release, the condition being that if he makes good he will receive an absolute discharge from the balance of his sentence; but if he does not make good he will be returned to serve his unexpired time. The absolute discharge is something more than a release from parole. It is a remission of the remaining portion of his sentence. Like a pardon, it is a gift from the executive, and like any other gift it does not become effective until it is delivered and accepted. After delivery, it cannot be recalled."

Under the provisions of Act No. 89, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 17509–1 *et seq.,* Stat. Ann. § 28.1361 *et seq.*), authorizing compacts with other States for mutual helpfulness in relation to persons convicted of crime or offenses, or who are or may be at large on probation or parole, Dawsett was surrendered for delivery to the State of New York. Such surrender was not in the nature of an extradition to New York, but his status was that of a paroled prisoner whose visitation and supervision were assumed by the State of New York. The New York court saw fit to require Dawsett, as one of the conditions of his suspended sentence, to "meet the requirements imposed upon him by the Michigan parole board." The rules and regulations of Michigan governing Dawsett's conduct while on parole were attached to and made a part of his delivery to New York. These rules read as follows:

"Rule 1. The paroled prisoner shall at once report to his designated first friend for instructions as to residence and work. In case he finds it necessary to change his employment or residence he shall first obtain the written consent of the governor through his first friend.

"Rule 2. He shall at the end of each month, until his final release, make a written report to his first friend, stating whether he has been constantly at work during the month, and if not, why not; how much he has earned, and how much he has expended, together with a general statement as to his surroundings and prospects.

"Rule 3. He shall in all respects conduct himself honestly, avoid evil associations, and in general pursue the course of a law-abiding citizen.

"Rule 4. He shall abstain from the use of all intoxicating liquors as a beverage.

"Rule 5. He shall not leave the State without permission from the governor.

"Rule 6. He shall, while on parole, remain in the legal custody and under the control of the governor of the State.

"Rule 7. He shall be liable to be retaken and again confined within the enclosure of the prison from which he was paroled for any reason or reasons that will be satisfactory to the governor, and at his sole discretion, until he receives a copy of his final discharge.

"Rule 8. If he fails to report to his first friend on the last of each month, or is guilty of doing any acts prohibited by the prison rules, he will be subject to forfeitures.

"Rule 9. If he fails to return to the prison enclosure when required by the governor so to do, or if he makes escape while on parole, he will be treated in all respects as if he had escaped from the prison enclosure.

"Rule 10. In case he finds it necessary to leave the county to which he is paroled for any purpose, he shall first obtain the written consent of the governor through his first friend."

That Dawsett was fully aware of the terms and conditions under which he was delivered to New York is borne out by his subsequent correspondence

with the Michigan authorities. That he violated the terms and conditions of his parole is evident from the facts stated above. Nor was his delivery to New York a relinquishment of jurisdiction by the State of Michigan.

Act No. 255, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 17543–11 *et seq.*, Stat. Ann. 1944 Cum. Supp. § 28.2071 *et seq.*), is a revision, consolidation and codification of the laws relating to paroles, et cetera. Chapter 3, § 8, of the act (Comp. Laws Supp. 1940, § 17543–48, Stat. Ann. 1944 Cum. Supp. § 28.2108) reads in part as follows:

"Every prisoner on parole shall remain in the legal custody and under the control of the commission."

While in such custody and control the parolee is deemed to be serving the sentence imposed upon him. *People* v. *Bendoni,* 263 Mich. 295.

We accept and adopt the statement of Judge Gillespie in his Michigan Criminal Law and Procedure, vol. 1, § 672, as follows:

"A parole granted to a prisoner is construed simply as a permit to go without the enclosure of the prison, and not as a release, and while so at large the prisoner is deemed to be still serving out the sentence imposed upon him by the court, and is entitled to good time allowance the same as if he were confined in prison. * * *

"When a prisoner applies for his parole, he applies under the provisions of the law, and agrees to its terms, and fully understands that for the misconduct provided in the statute he may be taken back to serve out his term of sentence. This power of recall is lodged in the bureau of pardons and paroles. * * * Without the power to retake the prisoner there would be no incentive to good behavior through fear of being again imprisoned."

See *People* v. *Cook,* 147 Mich. 127, and *Robinson* v. *Gries,* 277 Mich. 15.

The petitioner has not sustained the burden of showing that the conditions of his parole have been met. He was properly removed to the State prison at Marquette to serve out his sentence and should remain there until its completion, unless the bureau of pardons and paroles * should determine otherwise.

The writ of habeas corpus is dismissed.

STARR, C. J., and NORTH, WIEST, BUTZEL, SHARPE, BOYLES, and REID, JJ., concurred.