JURCZYSZYN v. MICHIGAN PAROLE BOARD.

1. PARDON AND PAROLES—STATUS OF PAROLEE—VIOLATION—ESCAPED PRISONER.

A parolee remains in the legal custody and under the control of the corrections commission and is treated as an escaped prisoner owing service to the State upon issuance of a warrant for violation of his parole (Act No. 255, chap. 3, § 8, Pub. Acts 1937).

2. SAME—SUBSEQUENT CRIME—SERVICE OF SENTENCES.

A parolee who commits a crime while at large and who is convicted and sentenced therefor, must serve the second sentence after the first sentence is served or annulled (Act No. 255, chap. 3, § 8,. Pub. Acts 1937).

3. SAME—CONSTRUCTION OF PAROLE.

A parole granted a prisoner is to be construed simply as a permit for such prisoner to go without· the prison enclosure, and not as a release, and while so at large he is to be deemed as still serving out the sentence imposed upon him by the court (Act No. 255, chap. 3, § 8, Pub. Acts 1937).

4. SAME—POWER TO GRANT AND REVOKE PAROLES—JURISDICTION.

Constitutional authorization to legislature to provide for release of persons imprisoned on indeterminate sentences empowered

it to give parole board exclusive jurisdiction as to granting and revocation of paroles (Const. 1908, art. 5, § 28; Act No. 255, chap. 3, § 6, Pub. Acts 1937).

5. SAME—VIOLATION.

A prisoner who applies for a parole under the statute agrees to its terms and fully understands that for misconduct as set forth in the statute he may be taken back to serve out his term of sentence (Act No. 255, Pub. Acts 1937).

6. SAME—RECALL OF PAROLEE—COURTS.

The power of recall of a parolee lodged in administrative officers is of the very essence of the indeterminate sentence law, provides the incentive to good behavior to the parolee through fear of being again imprisoned, and may be vested in any officer or board without any interference with judicial or executive constitutional authority (Act No. 255, Pub. Acts 1937).

7. SAME—EXTRADITION—JURISDICTION OF PAROLE BOARD.

Action of governor of this State in permitting the extradition from this State of a parolee to another State under the provisions of the uniform criminal extradition act did not terminate the jurisdiction of the parole board as to any future custody of the parolee in the event of his return to this State as, after issuance of warrant for violation of his parole, he was in the status of an escaped prisoner owing service to the State under the original sentence (Act No. 144, Pub. Acts 1937, as amended by Act No. 81, Pub. Acts 1939; Act No. 255, chap. 3, §§ 6, 8, Pub. Acts 1937).

8. EXTRADITION—PAROLEE—EXECUTIVE CLEMENCY.

The action of the governor in requiring the delivery of a parolee to the agent of another State for trial on a criminal charge in that State, on an extradition warrant, cannot be construed as an act of executive clemency.

9. PARDONS AND PAROLES—CUSTODY OF THE CORRECTIONS COMMISSION.

While a parolee at liberty is not in the *actual* custody of the corrections commission, he is subject to recall and is in the *legal* custody and under the control of the commission.

10. MANDAMUS—QUESTIONS REVIEWABLE—PARDONS AND PAROLES—EXTRADITION.

While there seems to be an apparent conflict as to the right to control the custody of a parolee, as between the corrections commission under the statute creating it and the governor un-

der the provisions of the uniform criminal extradition act, such question is not in issue in mandamus proceeding by plaintiff seeking to compel the corrections commission to set aside an order holding him to be a parole violator owing service to the State under first sentence where order was issued after governor had permitted extradition of plaintiff to another State, nolle prosequi was entered in proceedings had therein, plaintiff returned to this State under compulsion of parole officers, where neither the governor nor the corrections commission has challenged the other (Act No. 133, Pub. Acts 1937, as amended by Act No. 81, Pub. Acts 1939; Act No. 255, chap. 3, §§ 6, 8, Pub. Acts 1937).

11. PARDONS AND PAROLES—SURRENDER OF PAROLEE FOR EXTRADITION—WAIVER OF RIGHT TO RECOMMIT FOR VIOLATION OF PAROLE.
   The surrender of a paroled convict to the authorities of another jurisdiction for trial upon a criminal charge does not, as a matter of law, constitute a permanent waiver of the right to recommit such convict on account of the violation of the terms or conditions of his parole, to serve out the remainder of his sentence.

Petition by Casmere Jurczyszyn for writ of mandamus to compel Michigan Parole Board to set aside an order holding plaintiff to be a parole violator owing service to the State. Submitted December 6, 1946. (Calendar No. 43,312.) Writ denied January 6, 1947. Rehearing denied March 3, 1947.

*Michael J. Mozola (David M. Miro,* of counsel), for plaintiff.

*Foss O. Eldred,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Perry A. Maynard,* Assistants Attorney General, for defendants.

BOYLES, J. On an original petition for mandamus in this Court plaintiff was granted an order directing the defendant parole board to show cause why it should not be compelled to set aside an order holding plaintiff to be a parole violator owing service

to the State under a certain mittimus issued by a judge of the recorder's court of the city of Detroit on December 20, 1935. The answer of the parole board and plaintiff's reply thereto have been received and filed, and briefs filed. The question involved is whether further jurisdiction of this State over the plaintiff was waived by virtue of the governor having granted the State of Ohio a warrant of rendition for return of plaintiff to that State to answer to a criminal charge, while plaintiff was on parole after a sentence to, and confinement in, the State prison in this State.

On December 20, 1935, plaintiff, after conviction in Wayne county of the crime of robbery armed, was committed to the State prison to serve 7½ to 20 years, by a judge of the recorder's court. On January 28, 1941, plaintiff was paroled. One of the conditions of parole was that he remain in Wayne county for 4 years (to January 28, 1945), or until some other action was taken by the parole board. The chronological history of plaintiff's further involvement thereafter with the criminal laws is as follows:

On July 8, 1942, the parole board declared plaintiff a parole violator for the reason that he had been arrested by the Detroit police for questioning on a charge preferred by the authorities of Lucas county, Ohio, to the effect that plaintiff had committed the crime of robbery armed in that county, on June 5, 1942 (while he was on parole as above stated). On July 23, 1942, the governor of the State of Ohio made requisition to the governor of this State for the extradition of plaintiff to answer to an indictment charging him with the aforesaid crime in said Lucas county. After a hearing before the governor of this State, on August 5, 1942, the governor granted a warrant of rendition and plaintiff was thereupon taken to Ohio.

After plaintiff was extradited to Ohio, he stood trial in Lucas county for the crime of robbery armed. On October 26, 1942, before plaintiff's trial in Lucas county, Ohio, the bureau of pardons and paroles issued a parole violation warrant on the ground that plaintiff had violated the terms of his parole; plaintiff was declared to be an escaped prisoner owing service to this State from and after July 8, 1942, and a detainer was placed against plaintiff with the authorities at Toledo, Ohio. On his trial in Lucas county, Ohio, a mistrial was declared, and subsequently an order of nolle prosequi was entered. On January 4, 1943, plaintiff was released by the Ohio authorities and on January 6, 1943, he returned to Detroit. In his reply to defendant's answer he claims that he "was ordered to return to Michigan under parole supervision which he did, not of his own free will, but by coercion and compulsion on the part of parole officers who threatened to incarcerate him in Jackson prison. That the order of the parole board, made to plaintiff while he was in jail in Ohio, was unlawful and that the defendants had no right to exercise any authority over said plaintiff inasmuch as the warrant of rendition was signed by the governor of Michigan on August 5, 1942, and that as of that date the State of Michigan, had forfeited all rights to the plaintiff as far as parole supervision was concerned." On his return to Detroit on January 6, 1943, plaintiff reported to his parole officer, who recommended that the warrant for parole violation be suspended and that plaintiff be permitted to continue on parole. This suggestion was adopted, and plaintiff continued to work for the Ford company, making reports to his parole officer at the Detroit office each month thereafter from January, 1943, through November of that year. In November, he committed another crime.

On June 30, 1944, plaintiff, having been convicted by a jury in recorder's court of the city of Detroit of the crime of larceny in a building committed on November 25, 1943, was sentenced to the State prison of southern Michigan, to serve a sentence of from 3 to 4 years for said offense. On December 21, 1944, plaintiff was heard by the parole board, held to be automatically guilty of violating his parole by virtue of reception of the new sentence (and not by virtue of the former violation on June 5, 1942), and his case was passed indefinitely to the maximum sentence imposed for his first offense committed in 1935. By this action of the parole board he is required to serve the rest of his 1935 sentence, less allowable credits. The department of corrections gave plaintiff credit for time served on the sentence of December 20, 1935, for the entire period between July 8, 1942, and November 25, 1943, when he again offended the law of this State by committing larceny in a building. When plaintiff was charged with the latter offense, November 25, 1943, his parole was suspended and thereafter revoked. He is now serving time in State prison for the unserved balance of the 1935 sentence after credits were allowed, at the expiration of which time he will begin to serve the new sentence imposed June 30, 1944, upon his last conviction.

Plaintiff seeks an order of this Court requiring the parole board to cancel and set aside its order holding that plaintiff is still liable to imprisonment as a parole violator and under the sentence imposed in the recorder's court in 1935. He makes no claim against serving 3 to 4 years in State prison under his sentence in 1944, but objects to completing his term of imprisonment under the 1935 sentence before beginning to serve time under the 1944 sentence. His sole claim is, in effect, that the State

lost jurisdiction over him, in so far as the 1935 sentence was involved, when the governor of this State granted a warrant of rendition for his return to Ohio, on August 5, 1942, to answer to an indictment charging him with having committed a crime in that State (at which time plaintiff was on parole in this State).

The question as to plaintiff's status while on parole under the 1935 sentence is settled by the statute law of this State. Act No. 255, chap. 3, § 8, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 17543–48, Stat. Ann. 1946 Cum. Supp. § 28.2108), provides:

"Every prisoner on parole shall remain in the legal custody and under the control of the (corrections) commission. The assistant director of the bureau of pardons and paroles is hereby authorized, at any time in his discretion, and upon a showing of probable violation of parole, to issue a warrant for the return of any paroled prisoner to the penal institution from which he was paroled.     *     *     *

"A prisoner violating the provisions of his parole and for whose return a warrant has been issued by the assistant director of the bureau of pardons and paroles shall, after the issuance of such warrant be treated as an escaped prisoner owing service to the State, and shall be liable, when arrested, to serve out the unexpired portion of his maximum imprisonment.     *     *     *

"Any prisoner committing a crime while at large upon parole and being convicted and sentenced therefor shall serve the second sentence after the first sentence is served or annulled.

"A parole granted a prisoner shall be construed simply as a permit to such prisoner to go without the enclosure of the prison, and not as a release, and while so at large he shall be deemed to be still serving out the sentence imposed upon him by the court."

The above act has been before this Court on several occasions. In *Re Dawsett,* 311 Mich. 588, Dawsett was released from custody, on parole, for return to the State of New York to answer for a crime committed in that State. He was not extradited, but was returned to New York State under Act No. 89, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 17509–1 *et seq.,* Stat. Ann. § 28.1361 *et seq.*), which provides for interstate compacts for enforcement of penal laws. In the State of New York he was later released from custody on a suspended sentence on condition that he meet the requirements of the Michigan parole board. Upon his return to Michigan he was returned to prison for parole violation, and sought release on habeas corpus in this Court, on the ground that "he should now be released from custody because his original 'release' to the State of New York constituted a complete relinquishment of jurisdiction by the State of Michigan."

The writ was denied.

In *Re Casella,* 313 Mich. 393, an order was entered in the Wayne county circuit court in habeas corpus proceedings, granting Casella release from custody. In this Court the parole board, having been granted leave to appeal, claimed "that under the statute, Act No. 255, chap. 3, § 8, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 17543–48, Stat. Ann. 1945 Cum. Supp. § 28.2108), the granting and revocation of paroles are purely administrative functions and that the parole board is given *exclusive jurisdiction* as to such matters."

The Court said (p. 397):

"In view of the authority expressly granted by Constitution 1908, art. 5, § 28, the right of the legislature to so provide is not open to question."

In the above case the Court held (syllabi):

"Constitutional authorization to legislature to provide for release of persons imprisoned on indeterminate sentences empowered it to give parole board exclusive jurisdiction as to granting and revocation of paroles (Const. 1908, art. 5, § 28; Act No. 255, chap. 3, § 6, Pub. Acts 1937).

"A prisoner who applies for a parole under the statute agrees to its terms and fully understands that for misconduct as set forth in the statute he may be taken back to serve out his term of sentence (Act No. 255, Pub. Acts 1937).

"The power of recall of a parolee lodged in administrative officers is of the very essence of the indeterminate sentence law, provides the incentive to good behavior to the parolee through fear of being again imprisoned, and may be vested in any officer or board without any interference with judicial or executive constitutional authority (Act No. 255, Pub. Acts 1937)."

In the case now before us no claim is made that the governor granted plaintiff a commutation of sentence or a pardon, under article 6, § 9, Constitution (1908). Plaintiff was returned to the State of Ohio solely by virtue of a warrant granted by the governor in extradition proceedings held under the provisions of the uniform criminal extradition act (Act No. 144, Pub. Acts 1937, as amended by Act No. 81, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 17512–1 *et seq.,* Stat. Ann. 1946 Cum. Supp. §§ 28.1285 (1)–28.1285 (31)]). We are not in accord with plaintiff's claim that the governor's warrant granting the request of the governor of Ohio for rendition terminated the jurisdiction of the parole board as to any future custody of the plaintiff, in the event of his return to this State. He still was in the status of an escaped prisoner owing service

to the State under his 1935 sentence. To hold otherwise would give the governor's extradition warrant the effect of a commutation of sentence, or a pardon. We decline to so hold. The action of the governor in requiring the delivery of plaintiff to the agent of the State of Ohio for trial on a criminal charge in that State, on an extradition warrant, cannot be construed as an act of executive clemency. On the contrary, such action is quite the opposite of the principle underlying the right given to the governor by the Constitution to commute a sentence or grant a pardon, which acts are considered to be the exercise of executive clemency.

Plaintiff relies on citations of authorities from other jurisdictions, some of which seem to uphold plaintiff's contention, *People, ex rel. Barrett, Attorney General, v. Bartley,* 383 Ill. 437 (50 N. E. [2d] 517); *Ex Parte Guy,* 41 Okla. Cr. 1 (269 Pac. 782); *State v. Saunders,* 288 Mo. 640 (232 S. W. 973); *Mattes v. Taylor,* 348 Mo. 434 (153 S. W. [2d] 833); *Cozart v. Wolf,* 185 Ind. 505 (112 N. E. 241); *In re Whittington,* 34 Cal. App. 344 (167 Pac. 404); *Carpenter v. Lord,* 88 Ore. 128 (171 Pac. 577, L. R. A. 1918 D, 674); *State, ex rel. Falconer, v. Eberstein,* 105 Neb. 833 (182 N. W. 500).

Plaintiff relies largely on the Illinois case of *People, ex rel. Barrett, Attorney General, v. Bartley, supra.* In that case one McLaughlin had not been actually released from custody on parole, but was taken from the State prison and delivered to the agent of the State of Wisconsin on an extradition warrant granted by the governor of Illinois. In the course of its opinion, the court points out the difference between that case and the case at bar, as follows (p. 442):

"Had McLaughlin been extradited while absent from the prison and while on parole it would have created a different situation."

In the instant case the plaintiff, at the time the governor issued a warrant directing that he be turned over to the agent of the State of Ohio, was a parolee who had been permitted under the terms of his parole "to go without the enclosure of the prison," in accordance with Act No. 255, chap. 3, § 8, Pub. Acts 1937, *supra.* He was not in the *actual* custody of the corrections commission, but was at liberty, subject to recall. However, the act provides that he was "in the *legal* custody and under the control of the (corrections) commission." There may seem to be an apparent conflict as to the right to control such custody, as between the corrections commission under the above-cited act, and the governor under the provisions of the uniform criminal extradition act, whereby such an issue might arise between the governor and the corrections commission. Such is not the issue in this case, where neither the governor nor the corrections commission has challenged the right of the other, under the applicable statutes. In many of the cases from other jurisdictions on which plaintiff relies, the question as to waiver or relinquishment of jurisdiction was an issue between States, not between an individual and a State. Plaintiff largely relies on the *Whittington Case, supra.* But in that case the issue was whether the plaintiff was a fugitive from justice from another State.

Further time need not be spent in discussing possible distinctions. The reasoning and conclusions announced by this Court in *Re Dawsett, supra,* in considering the effect of Act No. 89, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 17509–1 *et seq., Stat.*

Ann. § 28.1361 *et seq.*), authorizing the governor to enter into compacts with other States for mutual relations concerning persons convicted of crime who are at large on probation or parole, are quite applicable to the instant case. The rule of law is stated in 147 A. L. R. p. 943, as follows:

"The decisions seem to warrant the statement, as a general rule, that the surrender of a paroled convict to the authorities of another jurisdiction for trial upon a criminal charge does not as a matter of law constitute a permanent waiver of the right to recommit such convict on account of the violation of the terms or conditions of his parole, to serve out the remainder of his term."

The writ is denied.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, REID, and NORTH, JJ., concurred. DETHMERS, J., did not sit.