PEOPLE v YOUNG (ON REMAND)

WAYNE COUNTY PROSECUTOR v DEPARTMENT OF CORRECTIONS
(ON REMAND)

Docket Nos. 196590, 196591, 196592. Submitted September 16, 1996, at
Lansing. Decided December 13, 1996, at 9:10 A.M.

Gregory L. Young was convicted following a bench trial in the Detroit
Recorder's Court, Lawrence D. Silverman, J., of breaking and enter-
ing. The crime occurred less than a week before the scheduled con-
clusion of a two-year period of parole for an earlier armed robbery
conviction. Although the Department of Corrections was aware of
the defendant's arrest for the breaking and entering, it discharged
him from parole before his conviction. Asserting ancillary jurisdic-
tion respecting the parole, the court, at the prosecutor's request,
ordered the department to show cause why it had discharged the
defendant from the armed robbery sentence. At the hearing, the
department stated that the defendant had been mistakenly dis-
charged, prompting the court to vacate the order of the Parole
Board discharging Young from parole, resentence him to the same
term for the breaking and entering, and add that the sentence was
to be served consecutively to his armed robbery sentence. The
defendant appealed

Concurrently, the Wayne County prosecutor brought a civil
action in the Wayne Circuit Court against the department, seeking a
declaration of how much time the defendant would be required to
serve for the earlier conviction before he would begin serving the
sentence for the breaking and entering. The court, Susan Bieke
Neilson, J., granted summary disposition for the prosecutor, finding
that the "remaining portion" clause of MCL 768.7a(2); MSA
28.1030(1)(2) requires parolees who commit crimes while on parole
to first serve the maximum of the earlier sentence before beginning
to serve the new sentence. Young and the Department of Correc-
tions each appealed.

The civil and criminal appeals were consolidated in the Court of
Appeals, JANSEN, P.J., and D. E. HOLBROOK, JR., J. (E. C. PENZIEN, J.,
concurring), which affirmed, holding that § 7a(2) repealed by impli-
cation §§ 34(2) and 38(5) of the corrections act, MCL 791.234(2),
791.238(5); MSA 28.2304(2), 28.2308(5), and that its ruling would

apply prospectively from the date of the circuit court's decision. 206 Mich App 144 (1994). The defendants appealed. The Supreme Court reversed and remanded the matter to the Court of Appeals. 451 Mich 569 (1996). The Supreme Court held that the "remaining portion" clause of § 7a(2) requires an offender to serve at least the combined minimums of sentences, plus whatever portion, between the minimum and the maximum, of the earlier sentence that the Parole Board may require to be served because of the violation of the terms of the parole. The Supreme Court directed the Court of Appeals to consider, on remand, the appropriateness of the Detroit Recorder's Court's exercise of ancillary jurisdiction, whether the Detroit Recorder's Court, as a court of limited jurisdiction, has the power to review a Parole Board decision, the effect of *In re Eddinger*, 236 Mich 668 (1926), and the scope of the Legislature's authorization for review of Parole Board decisions.

On remand, the Court of Appeals *held*:

1. The Department of Corrections is not immune from judicial review in cases involving prisoners who are not properly discharged from parole. A prosecutor may challenge a Parole Board decision to discharge a prisoner from parole by way of a complaint for mandamus against the Parole Board. The *Eddinger* decision does not compel a different result. *Eddinger* does not absolutely bar the recall of a discharge from parole.

2. The Detroit Recorder's Court is not a circuit court and does not have jurisdiction to hear a complaint for mandamus, which can be brought only in the Court of Appeals, the circuit court in the county where venue is proper, or in the Ingham Circuit Court. The prosecutor should have brought a complaint for mandamus in one of those courts.

3. The Detroit Recorder's Court did not properly exercise ancillary jurisdiction in setting aside the discharge of parole. The order setting aside the discharge from parole must be reversed.

Reversed.

O'CONNELL, J., concurring in the result only, stated that because the Detroit Recorder's Court lacked jurisdiction to hear this case, any action it took, other than to dismiss the action, was void.

1. ADMINISTRATIVE LAW — PAROLE — JUDICIAL REVIEW.

The Department of Corrections is not immune from judicial review in cases involving prisoners who are not properly discharged from parole; judicial review of an allegedly improper discharge from parole may be had by way of a complaint for mandamus brought by the prosecutor in the Court of Appeals, the circuit court in the

county where venue is proper, or in the Ingham Circuit Court (MCL 600.4401[1]; MSA 27A.4401[1]).

2. ADMINISTRATIVE LAW — PAROLE.

A parole is not the same as a pardon, commutation, or reprieve and is subject to certain statutory restrictions; although a parole, and a discharge from parole, is granted through the executive branch, a parole may not be granted unless the terms of MCL 791.242; MSA 28.2312 have been met.

3. COURTS — RECORDER'S COURT FOR THE CITY OF DETROIT — JURISDICTION.

The Recorder's Court for the City of Detroit is not a circuit court; the Recorder's Court is a court of limited jurisdiction and has jurisdiction with regard to the prosecution of crimes committed within the City of Detroit only (MCL 726.1 *et seq.*; MSA 27.3551 *et seq.*)

4. COURTS — JURISDICTION — ANCILLARY JURISDICTION.

A court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims; a court may exercise ancillary jurisdiction to permit disposition, by a single court, of claims that are, in varying respects and degrees, factually interdependent or to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

5. COURTS — JURISDICTION — ANCILLARY JURISDICTION.

A court has jurisdiction to resolve matters ancillary to the main proceedings before it where the ancillary matter arises from the same transaction that was the basis of the main proceeding or during the course of the main matter or is an integral part of the main matter, the ancillary matter can be determined without a substantial new fact-finding proceeding, determination of the ancillary matter through an ancillary order would not deprive a party of a substantial procedural or substantive right, and the ancillary matter must be settled to protect the integrity of the main proceeding or to insure that the disposition in the main proceeding will not be frustrated.

*John D. O'Hair*, Prosecuting Attorney, and *George E. Ward*, Chief Assistant Prosecuting Attorney, for the Wayne County Prosecutor.

*Stuart G. Friedman* and *Neal Bush*, for Gregory L. Young.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Chester S. Sugierski, Jr.,* Assistant Attorney General, for the Department of Corrections.

ON REMAND

Before: JANSEN, P.J., and HOLBROOK, JR. and O'CONNELL, JJ.

JANSEN, P.J. These consolidated cases are before us on remand from the Supreme Court. The Supreme Court reversed our prior holding concerning the interpretation of the "remaining portion" clause of MCL 768.7a(2); MSA 28.1030(1)(2). *People v Young,* 206 Mich App 144; 521 NW2d 340 (1994). The Supreme Court held that the "remaining portion" clause of § 7a(2) requires that the parole violator serve at least the combined minimums of the sentences, plus whatever portion of the earlier sentence the Parole Board may, because the parolee violated the terms of the parole, require the parolee to serve. *Wayne Co Prosecutor v Dep't of Corrections,* 451 Mich 569, 572; 548 NW2d 900 (1996). The Supreme Court then remanded these cases to this Court

> for further briefing, oral argument, and consideration of the issues that the Court of Appeals has not yet addressed, namely, the appropriateness of the trial court's exercise of ancillary jurisdiction, whether the Recorder's Court, as a court of limited jurisdiction, has the power to review a Parole Board decision, the effect of [*In re Eddinger,* 236 Mich 668; 211 NW 54 (1926)], and the scope of the Legislature's authorization for review of Parole Board decisions. [*Wayne Co Prosecutor, supra,* p 587.]

We now turn to these issues.

Defendant Gregory Lee Young was convicted of armed robbery on January 31, 1983. He was sentenced to a prison term of six to fifteen years on July 14, 1983. Young was paroled on September 15, 1989. His parole status was set for a term of two years, with an expiration date of September 15, 1991. On April 25, 1991, Young was convicted of assault and battery while still on parole status. He was sentenced to a term of probation, but his parole was not revoked. On September 9, 1991, Young committed a breaking and entering offense while on probation and on parole. Young was held in the Wayne County Jail, and his parole officer was aware of this fact. Incredibly, the Department of Corrections discharged Young from his parole on September 15, 1991, despite the fact that it knew that Young had violated his parole and was being held in the county jail on a new offense.

On May 26, 1992, Young was convicted of breaking and entering an unoccupied dwelling following a bench trial in the Detroit Recorder's Court. Young was sentenced to a term of 42 to 120 months in prison on June 10, 1992. The Recorder's Court questioned why the Department of Corrections had discharged Young from parole. The Wayne County Prosecutor then sought an order to show cause why the consecutive sentencing statute, MCL 768.7a(2); MSA 28.1030(1)(2), should not be enforced. The trial court asserted ancillary jurisdiction and issued a show cause order directing the Department of Corrections to explain why it had discharged Young from parole. The Attorney General's office represented the Parole Board at the hearing held on August 7, 1992. The Parole Board conceded that Young had been "mistak-

enly discharged" from parole, but offered no other explanation. The trial court then set aside the Parole Board order discharging Young from parole, resentenced Young to 42 to 120 months' imprisonment, and ordered that the sentence be served consecutively to the sentence for the prior armed robbery conviction for which he had been on parole.

We first turn to consideration of the scope of the Legislature's authorization for review of a Parole Board decision. In *Penn v Dep't of Corrections*, 100 Mich App 532; 298 NW2d 756 (1980), this Court held that the Administrative Procedures Act (APA), MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, vests the circuit courts with jurisdiction to review a parole revocation decision. Specifically, MCL 24.302; MSA 3.560(202) allows for judicial review of a final decision or order in a contested case. This Court in *Penn, supra*, pp 536-537, noted that the Department of Corrections is an agency for purposes of the APA and that a parole revocation proceeding is a contested case that triggers application of the APA. Further, in *Triplett v Deputy Warden Jackson Prison*, 142 Mich App 774, 779; 371 NW2d 862 (1985), this Court held that the APA is not the only avenue of judicial review available to a parolee and that review of a parole revocation decision is permissible upon a complaint for habeas corpus. See also *In re Casella*, 313 Mich 393; 21 NW2d 175 (1946).

The decisions in both *Penn* and *Triplett* speak only to a parolee's right to appeal from a revocation of parole. This case involves a prosecutor's right to appeal from a decision to discharge a parolee from

parole. The Supreme Court has cited[1] MCL 791.234(7); MSA 28.2304(7) for us to consider, and it provides:

> Except as provided in section 34a, a prisoner's release on parole is discretionary with the parole board. The action of the parole board in granting or denying a parole is appealable by the prisoner, the prosecutor of the county from which the prisoner was committed, or the victim of the crime for which the prisoner was convicted. The appeal shall be to the circuit court in the county from which the prisoner was committed, by leave of the court.

We do not find the above statutory provision to be applicable here because this case does not involve the Parole Board's decision to grant or deny a parole. Rather, this case involves the Parole Board's decision to discharge a prisoner from parole. Therefore, while a prosecutor may appeal from the Parole Board's decision to grant a parole, we are faced with whether the prosecutor may appeal from an order discharging a prisoner from parole.

The parties have not cited any explicit legislative authorization for judicial review of a Parole Board decision to grant a discharge from parole. However, a Parole Board decision to discharge a prisoner could be tested by way of a complaint for mandamus against a state officer. Mandamus is an extraordinary remedy and is only appropriate where there is a clear legal duty bearing upon the defendant and a clear legal right by the plaintiff to the discharge of that duty. *Shelby Twp Police & Fire Retirement Bd v Shelby Twp*, 438 Mich 247, 263; 475 NW2d 249 (1991). Mandamus may lie to compel the exercise of discretion, but not to compel its exercise in a particular

---

[1] See *Wayne Co Prosecutor, supra*, p 586, n 34.

manner. *Teasel v Dep't of Mental Health*, 419 Mich 390, 409-410; 355 NW2d 75 (1984).

Normally, the decision to discharge a prisoner from parole will not be subject to an exercise of discretion. For example, MCL 791.242; MSA 28.2312 provides, in relevant part:

> When any paroled prisoner has faithfully performed all of the conditions and obligations of his parole for the period of time fixed in such order, and has obeyed all of the rules and regulations adopted by the parole board, he shall be deemed to have served his full sentence, and the parole board shall enter a final order of discharge and issue to the paroled prisoner a certificate of discharge.

Therefore, whether a prisoner has faithfully performed all the conditions and obligations of parole is not a matter set to the discretion of the Parole Board. Either the prisoner complied with the conditions and obligations or parole, or he did not so comply. Further, this Court has stated that "unless and until parole is successfully completed, 'the prisoner is deemed to be still serving out the sentence imposed upon him by the court.'" *People v Raihala*, 199 Mich App 577, 579-580; 502 NW2d 755 (1993), quoting *In re Dawsett*, 311 Mich 588, 595; 19 NW2d 110 (1945).

In this case, it is undisputed that Gregory Young did not faithfully perform all the conditions and obligations of his parole because he committed two felony offenses while he was on parole status. Although the Department of Corrections was aware of both of Young's offenses, his parole status was never revoked. The Department of Corrections conceded that it had "mistakenly discharged" Young from parole. We believe that the Department of Corrections is not immune from judicial review in cases involving pris-

oners who are not properly discharged from parole. Thus, a prosecutor may challenge a Parole Board decision to discharge a prisoner from parole by way of a complaint for mandamus against the Parole Board.

The decision in *In re Eddinger, supra,* does not compel a different result. In *Eddinger,* the defendant was sentenced to a three- to six-year prison term on June 22, 1922. On June 12, 1923, the defendant was placed on parole for a period of one year. On July 7, 1924, after the parole period expired, the Governor signed an absolute discharge and forwarded it for delivery to the defendant. However, before the discharge was signed, the defendant violated his parole and fled to California. The parole discharge was returned for cancellation, and a warrant was issued for the defendant's arrest. Our Supreme Court stated that the "questions involved relate to the power of the governor to recall the absolute discharge issued by him, and to revoke the parole after the designated parole period had expired." 236 Mich 669-670. Our Supreme Court stated:

> The purpose of a parole is to keep the prisoner in legal custody while permitting him to live beyond the prison inclosure so that he may have an opportunity to show that he can refrain from committing crime. It is a conditional release, the condition being that if he makes good he will receive an absolute discharge from the balance of his sentence; but if he does not make good he will be returned to serve his unexpired time. The absolute discharge is something more than a release from parole. It is a remission of the remaining portion of his sentence. Like a pardon, it is a gift from the executive, and like any other gift it does not become effective until it is delivered and accepted. After delivery it cannot be recalled. So in the instant case if there

was a delivery and acceptance of the discharge, it was
beyond the power of the governor to revoke it. [*Id.*, p 670.]

The Supreme Court held that there was no delivery
to the defendant and that the Governor had the
power to revoke the discharge and apprehend the
defendant, who had violated his parole, and return
him to prison to serve the balance of his sentence.
*Id.*, p 671. We find that *Eddinger* does not control
this case for two main reasons. First, there was no
actual delivery of the discharge of parole in *Eddinger*,
unlike the present case. Therefore, the Supreme
Court's discussion in *Eddinger* concerning an abso-
lute discharge from parole and the ability to recall a
discharge after delivery is dicta. Whether a delivered
discharge from parole is revocable was not directly
addressed in *Eddinger* because there was no delivery.

Second, at the time that *Eddinger* was decided, the
Governor had the exclusive authority to grant parole
in all cases of murder, rape, and certain other
offenses. 1915 CL 15863. Mr. Eddinger was convicted
of rape. Currently, the power to grant reprieves, com-
mutations, and pardons rests exclusively with the
Governor, Const 1963, art 5, § 14, and the judiciary
may not infringe on this power because it would vio-
late the principle of separation of powers. *People v
Erwin*, 212 Mich App 55, 63; 536 NW2d 818 (1995).
This case involves the power to parole, which is a
statutory power subject to limitations by the Legisla-
ture. See MCL 791.231 *et seq.*; MSA 28.2301 *et seq.* We
seriously doubt that the Legislature could have
intended, when it created the statutory scheme con-
cerning parole, that the Department of Corrections
would be immune from issuing illegal parole dis-
charges. Moreover, we also doubt that the Legislature

could have intended that prisoners such as Gregory
Young, who commit a felony offense while on parole,
could suffer no consequences for committing a crime
where the Department of Corrections issues an illegal
discharge from parole.

Other, more recent, cases in this Court are also
instructive. In *People v Gregorczyk*, 178 Mich App 1;
443 NW2d 816 (1989), the defendant was sentenced to
an invalid sentence of five to twenty years for a con-
trolled substances violation. During the appeals pro-
cess, the Department of Corrections discharged the
defendant from parole, even though the defendant
had not served even the minimum of his five-year
term. After the parole was discharged, the defendant
was resentenced to a term of lifetime probation. The
Department of Corrections' action in discharging the
defendant from parole was in violation of the appli-
cable controlled substances statute that required that
the defendant serve the minimum term before being
paroled. This Court reversed the order of sentence
imposing lifetime probation and discharged the
defendant from the term of probation.

In *Gregorczyk*, this Court was concerned with
double jeopardy and due process concerns. First, it
was noted that the defendant could not receive sen-
tence credit for his term of probation where he had
served 3½ years is five-year term. This Court held that
this would amount to multiple punishment for the
same offense, contrary to the Fifth Amendment guar-
antee against double jeopardy. *Id.*, p 9. Further, this
Court held that resentencing the defendant after his
discharge from his first sentence would result in a
denial of due process because the defendant's abso-
lute discharge from parole would have been summa-

rily revoked without due process. Specifically, this Court stated that due process would require an inquiry into the facts, circumstances, and reasoning surrounding the defendant's discharge, but that there was nothing presented in the record sufficient to warrant a recall or revocation of the defendant's discharge. *Id.*, p 12.

In *Michigan ex rel Oakland Co Prosecutor v Dep't of Corrections*, 199 Mich App 681, 694; 503 NW2d 465 (1993), this Court held that the trial court had jurisdiction to vacate the defendant's discharge from parole where the discharge was improper. This Court specifically stated that no new sentence was being imposed and that the defendant was recalled and imprisoned from his parole discharge only to complete the sentence from which he had been improperly discharged.

In *People v Lamb (After Remand)*, 201 Mich App 178; 506 NW2d 7 (1993), the defendant was sentenced to an invalid sentence of probation, and, just one day before the release of this Court's opinion vacating that invalid sentence, the Department of Corrections discharged the defendant from probation. The defendant was then resentenced to a term of imprisonment. This Court held that the discharge of the defendant from probation did not preclude resentencing and that the trial court had the authority to correct an invalid sentence. *Id.*, p 181. This Court in *Lamb* limited *Gregorczyk* to its facts and noted that there were no double jeopardy concerns because the defendant received sentence credit. Further, the decision in *Lamb* did not involve any executive commutation of the defendant's original sentence and there were no separation of powers concerns.

In *People v Hill (After Remand)*, 202 Mich App 520; 509 NW2d 856 (1993), this Court held that resentencing was not precluded where the defendant was originally sentenced to an invalid sentence and the defendant was discharged unconditionally from his sentence just twelve days before this Court's opinion remanding the matter to the trial court for resentencing. This Court noted that there was no executive commutation of the original sentence and that the defendant was entitled to sentence credit for time served. *Id.*, p 524.

Most recently, in *Harper v Dep't of Corrections*, 215 Mich App 648; 546 NW2d 718 (1996), this Court considered a mandamus action brought by a prisoner who challenged the refusal of the Department of Corrections to discharge his parole. The prisoner was sentenced to a two- to five-year term of imprisonment and was paroled. The Parole Board issued, but did not deliver, an order for the discharge. After the order was issued, but before the prisoner's parole expiration date, the prisoner was arrested for a new offense. The discharge order that had been issued was never delivered to the prisoner and the Department of Corrections treated the order as if it had never been issued. This Court denied the prisoner's request to declare effective the Parole Board's order discharging his parole because the prisoner did not serve his full sentence because he did not faithfully perform all the conditions and obligations of his parole for the period fixed in the parole order.

In the present case, there is no separation of powers problem. Young was not granted a commutation, reprieve, or pardon, which would not be subject to judicial review. Parole is not the same as a pardon,

commutation, or reprieve and a parole is subject to certain statutory restrictions. While a parole, and a discharge from parole, is granted through the executive branch, a parole may not be discharged unless the terms of MCL 791.242; MSA 28.2312 have been met.

Accordingly, we conclude that *Eddinger* does not absolutely bar the recall of a discharge from parole and that judicial review of an allegedly improper discharge from parole is permissible. Here, the discharge from parole was illegal because it violated the terms of MCL 791.242; MSA 28.2312, that is, Young did not faithfully perform all the conditions and obligations of his parole for the period fixed in the parole order (two years) because he committed two felony offenses while on parole. Judicial review in this case, of an allegedly improper discharge from parole, may be had by way of a complaint for mandamus brought by the prosecutor.

Therefore, we must decide whether the Recorder's Court, as a court of limited jurisdiction, has the power to review a Parole Board decision. MCL 600.4401(1); MSA 27A.4401(1) provides that an action for mandamus against a state officer shall be brought in the Court of Appeals, in the circuit court in the county in which venue in proper, or in Ingham County, at the option of the party bringing the action. See also MCR 3.305(A)(1), (B)(2).

The Recorder's Court for the City of Detroit is not a circuit court. Rather, the Recorder's Court is provided for by statute. See MCL 726.1 *et seq.;* MSA 27.3551 *et seq.* The Recorder's Court is a court of limited jurisdiction and has jurisdiction for the prosecution of crimes committed within the City of Detroit only.

Because the Recorder's Court is not a circuit court, it could not have jurisdiction to hear a complaint for mandamus because a complaint for mandamus can be brought only in the Court of Appeals, the circuit court in the county where venue is proper, or in the Ingham Circuit Court. Accordingly, in order to challenge the Parole Board's decision to discharge Young from his parole, the prosecutor should have brought a complaint for mandamus in the Wayne Circuit Court, the Ingham Circuit Court, or the Court of Appeals, at the prosecutor's option. MCL 600.4401(1); MSA 27A.4401(1).

Last, our Supreme Court has directed us to determine whether the Recorder's Court properly exercised ancillary jurisdiction. This Court has recognized that the Recorder's Court may properly exercise ancillary jurisdiction in certain circumstances. *In re Property Held by the Detroit Police Dep't*, 141 Mich App 302; 367 NW2d 376 (1985); *People v Washington*, 134 Mich App 504; 351 NW2d 577 (1984) (the Recorder's Court has ancillary jurisdiction to return property to a person from whom it has been seized for use as possible evidence).

Ancillary jurisdiction usually involves claims by a defending party brought into court against its will, or by another person whose rights might be lost irretrievably unless the party could assert them in an ongoing action in a court. *Peacock v Thomas*, 516 US ___; 116 S Ct 862, 867; 133 L Ed 2d 817, 825 (1996). In *Peacock*, the Supreme Court stated that the "court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims." *Id.* A court may exercise ancillary jurisdiction (1) to permit disposition, by a single court, of

claims that are, in varying respects and degrees, factually interdependent, or (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees. *Id.*, 116 S Ct 867; 133 L Ed 2d 824.

This Court has previously stated that ancillary jurisdiction should attach where: (1) the ancillary matter arises from the same transaction that was the basis of the main proceeding, or arises during the course of the main matter, or is an integral part of the main matter; (2) the ancillary matter can be determined without a substantial new fact-finding proceeding; (3) determination of the ancillary matter through an ancillary order would not deprive a party of a substantial procedural or substantive right; and (4) the ancillary matter must be settled to protect the integrity of the main proceeding or to insure that the disposition in the main proceeding will not be frustrated. *In re Property*, *supra*, p 306. In applying these guidelines to the circumstances of this case, we believe that the Recorder's Court did not properly exercise ancillary jurisdiction in setting aside the discharge of parole.

On May 26, 1992, following a bench trial in the Detroit Recorder's Court, Young was convicted of breaking and entering an unoccupied dwelling. The Recorder's Court sentenced Young to a prison term of 42 to 120 months on June 10, 1992. The Wayne County Prosecutor then sought an order to show cause why the consecutive sentencing statute, MCL 768.7a(2); MSA 28.1030(1)(2), should not be enforced. A hearing was held on August 7, 1992, before the same Recorder's Court judge. The Recorder's Court set aside the discharge from parole and resentenced

defendant to a consecutive sentence. We find that the question whether Young's parole was properly discharged did not arise out of the criminal case before the Recorder's Court. The discharge from parole did not arise out of the same transaction as the breaking and entering proceedings, was not an integral part of the breaking and entering offense, and arose during the course of the criminal trial only at the sentencing stage where the prosecutor and the trial court were puzzled by Young's discharge from parole when he had committed a felony offense before his parole period expired. Moreover, the parole issue did not have to be settled to protect the integrity of the breaking and entering proceedings or to ensure that the disposition of the breaking and entering offense would not be frustrated.

Therefore, following the guidelines set forth in *In re Property, supra,* we conclude that the Recorder's Court did not properly assert ancillary jurisdiction to set aside the discharge from parole. We reluctantly reverse the Recorder's Court order setting aside the parole discharge because the law requires it. However, Gregory Lee Young was not entitled to a parole discharge as a matter of law and as a matter of public safety. Young, in his appellate brief, states that the Recorder's Court erred in ruling that the Parole Board may not discharge "a less than perfect parolee." Not only is Young's characterization of himself a gross understatement, it is not a proper description of the Recorder's Court ruling. Young committed *two* criminal offenses while on parole (which was fixed at only two years), and, while he was being held in the Wayne County Jail with the knowledge of the Depart-

ment of Corrections, Young still was discharged from parole.

The action of the Department of Corrections in discharging Young from parole is even more incredulous considering Young's criminal record. The presentence report prepared for the sentencing for the breaking and entering conviction in June 1992 indicates that Young had compiled eight felony and seven misdemeanor convictions by the age of forty-one. The presentence report states:

> Prognosis for the defendant's future appears to be very poor. The defendant has maintained a criminal lifestyle dating back to as early as 1968. Since that time, defendant has established a significant amount of criminal convictions resulting in lengthy periods of incarcerations. It now appears that the defendant has continued that criminal involvement while on parole supervision to the Michigan Department of Corrections. The defendant has had no employment since 1983 and now suffers from a severe injury to his right leg caused by a September 1991 automobile accident. In view of this fact, it is highly unlikely that the defendant is a suitable candidate for Community Supervision.

Not only is the public safety seriously jeopardized by allowing a parolee such as Young to be improperly discharged from his parole, but such actions of the Department of Corrections are not isolated incidents. We emphasize this fact because Young essentially argues that there is no review of a Parole Board discharge. We have already adverted to three published decisions in this Court where the Department of Corrections improperly discharged parolees, as well as this case. Further, a news article in The Detroit News and Free Press printed on June 20, 1992, indicated that it was the policy of the Department of Correc-

tions to stop looking for parolees who "disappear." The article also noted that 1,540 of the then 12,688 parolees had disappeared. Giving such unfettered immunity to the Department of Corrections would not only jeopardize public safety, but seems to do nothing for parolees such as Young who are clearly not rehabilitated by their incarceration.

In conclusion, we must reverse the order of the Recorder's Court to set aside Mr. Young's discharge from parole. The Wayne County Prosecutor should have brought an action for mandamus in this matter in the Wayne Circuit Court, in the Ingham Circuit Court, or in the Court of Appeals. The Recorder's Court did not have jurisdiction to hear this matter.

Reversed.

HOLBROOK, JR., J., concurred.

O'CONNELL, J. (*concurring*). I concur in the result only. The Recorder's Court is a court of limited jurisdiction and, as such, it may not review administrative actions of other tribunals and it may not issue extraordinary writs other than habeas corpus. The Recorder's Court lacks subject-matter jurisdiction. "When a court lacks subject matter jurisdiction to hear and determine a claim, any action it takes, other than to dismiss the action, is void." *Bowie v Arder*, 441 Mich 23, 56; 490 NW2d 568 (1992). Although interesting, the balance of the majority opinion is dicta. The Recorder's Court does not have jurisdiction to hear this case.