## KELLY *v.* MANGUM, sheriff.

1. Where a fugitive from justice from the State of Missouri was convicted of a crime in a United States district court in the State of Alabama, and was committed to the United States penitentiary in Georgia to serve his sentence, upon his release therefrom at the expiration of such term, upon requisition from the Governor of Missouri, the Governor of Georgia could issue his warrant and could have such person arrested for rendition to the demanding State.

2. Under such facts the person so arrested as a fugitive from justice was not entitled to a discharge from custody by writ of habeas corpus on the ground that he did not voluntarily come into the State of Georgia as a fugitive.

APRIL 12, 1916.

Habeas corpus. Before Judge Hill. Fulton superior court. September 1, 1915.

Kelly applied for a writ of habeas corpus, alleging that he was illegally restrained of his liberty by Mangum, the sheriff of Fulton county, Georgia, the pretense for his detention being a warrant issued by the Governor of Georgia upon a requisition purporting to have been issued for the applicant under the name of Samuel Raymon, alias Oakland Sammie. Two reasons were alleged why the detention was illegal: First, because the applicant was not the person demanded by the requisition; and second, because the applicant was not a fugitive from justice of the demanding State, in the State of Georgia, as provided by the constitution and laws of the United States. On the return of the writ the case was submitted to the presiding judge upon a stipulation of facts in substance as follows: Kelly was brought into the State of Georgia to the United States penitentiary at Atlanta, by a deputy marshal of the United States, under a commitment from a district court of the United States for the middle district of Alabama, to serve a sentence of two years under a conviction for robbing a post-office. Upon the release of the applicant from the penitentiary, he was immediately rearrested under a warrant issued by the Governor of Georgia upon a requisition from the State of Missouri, and was held by the sheriff under such warrant, when application was made for the writ. The presiding judge denied the application and remanded the applicant to the custody of the sheriff. The applicant excepted.

*Lamar Hill,* for plaintiff.    *A. L. Ivey, Hugh M. Dorsey, E. A. Stephens,* and *J. W. LeCraw,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.) The allegation of mistaken identity was not urged. It was not denied that the plaintiff in error was a fugitive from justice from the State of Missouri. But it was contended, that, as he was brought from Alabama to Georgia by a deputy marshal, under a commitment of a United States district court of Alabama, and placed in the United States penitentiary to serve a sentence for a crime of which he had been convicted, he did not flee into the State of Georgia, and could not be held under a warrant in this State for the purpose of extradition to Missouri.

Section 2 of Article IV of the constitution of the United States contains the following provision: "A person charged in any State with treason, felony, or other crime, who shall flee from justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime." Section 5278 of the Revised Statutes of the United States is as follows: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear," etc. The question in this case is substantially controlled by the decision in Innes *v.* Tobin, 240 U. S. 127 (36 Sup. Ct. 290, 60 L. ed.    ). If the constitutional provision is not self-executing, and if State legislation be necessary to supplement the statute of the United States, on the theory that the act of Congress is not as broad as the power granted by the constitution, and there is an unoccupied field for State action, then the legislation in this State is sufficient to provide for such a case as the present one. By the Penal Code

(1910), § 1352, it is declared: "Whenever there is found, within this State, a fugitive from justice from a foreign State, and by the treaty stipulations of the United States such person is to be surrendered up to the authorities of such foreign State upon requisition from the proper officers, the Governor, by his warrant, shall cause him to be arrested and delivered over to such officer." By section 1353 it is declared: "It is the duty of the Governor, under his warrant, to cause to be arrested, and delivered up to the proper officers of any other State of the United States, any fugitive from justice from said State, upon demand made of him by the Executive of such other State in the manner prescribed by the laws and constitution of the United States. And if such fugitive shall have assumed another name in this State, and the Governor is satisfied, by evidence under oath filed in his office, of the identity of such person with the fugitive demanded, he shall state the fact in his warrant for the arrest." Thus, as to the former case, the language employed is that "Whenever there is found, within this State, a fugitive from justice from a foreign State," etc. And in the latter case the language is that "It is the duty of the Governor . . to cause to be arrested, and delivered up to the proper officers of any other State of the United States, any fugitive from justice from said State," etc. In neither section does the language limit the arrest and rendition to one who voluntarily comes within this State. If the case of one who voluntarily flees into the State is covered by the section of the Revised Statutes of the United States, but that section is construed as not sufficiently broad to provide for a case where a fugitive from another State does not voluntarily come into this State but is brought here from a third State by an officer, and later released after serving a term in the penitentiary, and if that contingency is left to be provided for by State legislation, Penal Code § 1353 is sufficiently extensive to leave no gap for the fugitive to escape on that ground. See also Roberts v. Reilly, 116 U. S. 80 (6 Sup. Ct. 291, 116 L. ed. 544); Appleyard v. Massachusetts, 203 U. S. 222 (27 Sup. Ct. 122, 51 L. ed. 161, 7 Ann. Cas. 1073); State ex rel. Burner v. Richter, 37 Minn. 436 (35 N. W. 9); People v. Benham, 128 N. Y. Supp. 610 (71 Misc. 345); Ex parte Innes (Tex. Cr. App.), 173 S. W. 291.

<em>Judgment affirmed. All the Justices concur.</em>