## COZART v. WOLF ET AL.

[No. 22,795. Filed April 20, 1916. Rehearing denied November 10, 1916.]

1. EXTRADITION.—*Persons Subject.*—*Persons in Custody on Charge of Other Crime.*—One in actual custody of either a state or federal court is not subject to extradition or arrest by the officers of another court prior to an actual release or relinquishment of the right of custody on the part of the court where the matter is pending. p. 510.

2. CRIMINAL LAW.—*Jurisdiction.*—*Waiver.*—The right of the court which first obtains jurisdiction of the person of a defendant to retain its custody and control until ultimate decision is one which resides in the court, to be exercised or waived in the proper administration of justice, and, if such right of custody is either waived or not asserted, neither the defendant nor his bondsmen may complain. p. 510.

3. BAIL.—*Jurisdiction of Accused.*—*Rights of Sureties.*—Where one has subjected himself to prosecutions in two jurisdictions he cannot choose the one to which he will first respond, and the fact that he has been arrested and given bond in one of such jurisdictions does not affect the situation so far as he and his sureties are concerned. p. 511.

4. BAIL.—*Persons Subject.*—*Jurisdiction of Accused.*—One admitted to bail and released is not regarded as being in the actual custody of the court so admitting him to bail during the time he is at liberty under his bond, and during such time he may be arrested and prosecuted in another jurisdiction for another offense, whether committed before or after the offense for which he is under bail. p. 511.

5. BAIL.—*Release of Surety.*—*Arrest of Principal.*—Where one accused of crime is at liberty under bond, his surety may discharge himself from liability at any time by arresting and delivering up the principal, but, if the accused is under arrest for an offense committed in another jurisdiction and is in the actual custody of the court or its officers, such court may retain custody of the prisoner as against his bondsman. p. 512.

From Knox Circuit Court; B. M. Willoughby, Judge.

Extradition proceeding by John Wolf and others against Morgan W. Cozart in which one Wade sought to intervene. From the judgment rendered, Cozart appeals. *Affirmed.*

*Leroy M. Wade* and *A. J. Padgett,* for appellant. *W. M. Alsop* and *W. H. Hill,* for appellees.

LAIRY, J.—This is an appeal from a final order of the judge of the Knox Circuit Court ordering that appellant be turned over to appellee Davis, as the agent of the state of Georgia, to be returned to that state under a requisition issued by the Governor of Georgia on the Governor of Indiana. Appellant was arrested by appellee Wolf, as sheriff

of Knox county, and by him taken before the judge of the circuit court of that county for identification. Appellant filed several objections which were stricken out on motion.    Appellee Wade appeared and offered to file a petition to be admitted as a party, in which petition his alleged interest was shown, and also his objections to an order being made directing that appellant be delivered up to the agent of the state of Georgia.    On motion of appellees Davis and Wolf, the court rejected the petition and motion of appellee Wade and refused to permit it to be filed or to consider it, to which ruling Wade excepted.

The errors assigned and presented are based upon the rulings of the court referred to, and as the same facts are before the court and the same questions of law raised by each of the errors presented, the court will, for convenience, consider only the action of the trial court in sustaining the motion of appellees Davis and Wolf to strike out the second paragraph of objections of appellant.   Omitting the the formal parts, this paragraph is as follows: "Comes now the said Morgan W. Cozart and for a second and further paragraph of objections to the application of John Wolf and W. M. Davis to have said Cozart ordered delivered over to the said W. M. Davis to be taken to the State of Georgia to answer an indictment for misdemeanor, and says that heretofore, to wit, on the —— day of October, 1914, he was apprehended while in the state of Indiana, the place of his domicile, and arrested by an United States Marshal for the Eastern Division of the United States District Court in the State of Mississippi upon a *capias* issued out of said court upon an indictment theretofore returned by the Grand Jury in said District Court of the United States for said Eastern Division of the state of

Mississippi charging the defendant with a felony by a fraudulent use of the United States mail.

"That said Marshal took this defendant to said state of Mississippi and delivered him in said court and into the custody thereof. That said court required the defendant to execute his bond in the penal sum of five thousand dollars conditioned for his appearance in said court to answer said charge on the 5th day of April, 1915, and thereupon he executed said bond with LeRoy M. Wade as surety thereon and said court thereupon turned over the custody of said defendant to the said Wade to have and to hold until said 5th day of April, 1915, when he was required by the terms of his said recognizance to deliver said Cozart to said court for trial. That ever since said —— day of October, 1914, he has been in the custody of the said District Court of the United States upon said process and that his trial is set for said 5th day of April, 1915, in said court and that it will be necessary for him to start for the city of Aberdeen in said state of Mississippi where said court will sit to hear said cause within the next two days and that on the 28th day of March, 1915, while he was in the custody of said bondsman and of said District Court and making preparations for his said trial and his return to said court he was arrested by the said W. M. Davis and John Wolf who have unlawfully and without right held him in custody ever since and by this proceeding are attempting to take him to the state of Georgia to a point more than four hundred miles from said city of Aberdeen and there to cast him in prison and thereby prevent his appearance in said United States District Court at said time and place. That said defendant is a stranger in said state of Georgia and at the place where it is proposed to take him and that it will be

impossible for him to give bail in said state of Georgia and to secure his release so as to be able to be in said District Court at Aberdeen at the time set for his trial and that he will be on account thereof unable to prepare his defense to said cause in said District Court. Defendant further says that the actions of the said Davis and Wolf already taken and the actions they are attempting to take by removing this defendant out of the custody of said bondsman and court will hinder, delay and obstruct the process of said United States District Court, which now has prior jurisdiction over this defendant and be an indirect contempt of said Court.

"Defendant further says that he will be in the custody of said District Court until his cause is disposed of and that, as soon as the proceedings are ended against him in said District Court, the state of Georgia can without inconvenience or delay obtain the arrest of this defendant. Defendant says that the proceedings herein are interfering with his lawful rights as a prisoner of the United States of America. Wherefore he asks that the petition be not granted."

In the case of *Taylor* v. *Taintor* (1872), 16 Wall. 366-370, 21 L. Ed. 287, the Supreme Court of the United States declared the doctrine that: "Where a State court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed. and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal cases. It is indeed a principle of universal jurisprudence that where jurisdiction has attached to person or thing, it is—unless there is some provision to the contrary—exclusive in effect until it has wrought its function."

It is the position of appellant that the federal court of the Eastern District of Mississippi has jurisdiction of his person and that his person is in the actual custody and control of that court even though he has been admitted to bail and thus given his liberty until such time as he is required to appear in accordance with the requirements of his bond. He asserts that an order directing his delivery to the agent of the state of Georgia to be removed to that state for trial on a charge of violating a law of that state would be an invasion of the jurisdiction of the United States District Court, which first acquired jurisdiction.

It is "well settled that if a party is on trial or in duress—that is, in actual custody—under the authority of a state court, no other state court, and no United States court, should, except in an urgent case, take the defendant from that custody, prior to an actual release or relinquishment of the right to the custody on the part of the court before which the matter is pending." Ex parte Marrin (1908), 164 Fed. 631, 636. If appellant had been in the actual custody of the federal court or its officers, it is quite clear that a state court could not rightfully have made or enforced any order, the effect of which would be to deprive that court of such custody without its consent or over its objection. The right of the court which first obtains jurisdiction of the person of a defendant to retain its custody and control, until its jurisdiction is exhausted or has wrought its function, is one which resides in the court, to be exercised or waived in the proper administration of justice. It is not a right personal to a defendant or his bondsmen which they or either of them can enforce. If the court which first obtains the custody of the person of a defendant in

the exercise of its jurisdiction waives its right to retain such custody or declines or fails to assert such right, neither the defendant nor his bondsmen are in a position to complain. *In re Fox* (1892), 51 Fed. 427. The record does not disclose that the custody of appellant was requested by any officer of the United States District Court of Mississippi or that the federal government desired that he be returned to that court for trial. There is no actual conflict between jurisdictions except such as the accused and his surety have endeavored to inject into this proceeding. An accused person who by his alleged malefactions has subjected himself to prosecutions in two jurisdictions has no right to choose the one to which he will first respond, and the fact of his having been arrested and having given bond for his appearance in one of such jurisdictions does not affect the situation so far as he and the sureties on his bond are concerned. In this respect the sureties are in no better position than their principal. *United States* v. *VanFossen* (1871), 1 Dillon 406; *Devine* v. *State* (1858), 5 Sneed (Tenn.) 623. According to the more recent decisions on the subject, a person who has been admitted to bail and released is not regarded as being in the actual custody of the court so admitting him to bail, during the time he is at liberty under the terms of his bond. During such time he may be arrested and prosecuted in another jurisdiction for a different offense whether committed before or after the commission of the offense for which he is under bail. *Ex parte Marrin, supra; Mackin* v. *People* (1886), (Ill.) 8 N. E. 178. These cases treat a bail bond as a contract between the principal and his sureties and the sovereignty in whose favor the bond is given, under the terms of

which the principal is released from actual custody. His sureties may arrest him at any time and deliver him up in their discharge so long as he is at liberty, but if he is under arrest for a crime committed in another jurisdiction and is in the actual custody of the court or its officers, such court may retain such custody as against his bondsmen. As was said in the case of *Mackin* v. *People*, *supra*, "We recognize the position taken in the argument of counsel, also, that for many purposes the defendant who is out on bail is regarded as constructively in a living prison,—that is to say, under the control of his bondsmen; but this is only constructive, and it is not universal. We could not consent to recognize it to be the law that if a party had committed some petty offense against the revenue laws of the United States, and enters into a recognizance of a few hundred dollars for his appearance at a subsequent term and is out on bail, and thereafter had committed murder, or some other very serious crime, that he could not be arrested for the charge of murder which he had committed until after he had chosen to enter his appearance in the federal court, or his bondsman had chosen to take him and surrender him to that court, and it had tried him and convicted him, and executed its sentence upon him; and the position contended for would lead, in our estimation, to that consequence. When a party commits a crime against the law, so far as he is concerned, and so far as those who have previously been his bondsmen are concerned, he is liable to be arrested, and required to give bail, if it be bailable, and, if not, to be imprisoned for the commission of that crime, in order that he may answer for it. The comity just recognized as existing between courts for different claims on parties is never to be exercised

so as to operate to the release of offenders against the law upon mere technicalities."

The trial court did not err in its rulings and its judgment is affirmed.

NOTE.—Reported in 112 N. E. 241. Extradition of a person who is under confinement in asylum state, note 24 L. R. A. (N. S.) 799, 800; 112 Am. St. 115. General discussion as to extradition and fugitives subject thereto, 28 L. R. A. 289; 51 L. R. A. (N. S.) 668; 112 Am. St. 103. See under (1) 19 Cyc 95; (5) 6 C. J. 1042; 5 Cyc 126.