GILCHRIST *v.* OVERLADE, AS WARDEN, ETC.

[No. 29,137. Filed October 20, 1954.]

*James C. Cooper,* Public Defender, and *Perry W. Cross,* Deputy Public Defender, for appellant.

*Edwin K. Steers,* Attorney General, and *Carl M. Franceschini* and *Frank E. Spencer,* Deputy Attorneys General, for appellee.

BOBBITT, J.—This appeal is from an order of the LaPorte Superior Court denying appellant's petition for a writ of habeas corpus.

The sole question here presented is whether the alleged surrender of appellant by the warden of the Indiana State Prison to the Federal authorities for trial and conviction for the commission of a Federal offense, while on parole from the Indiana State Prison, constituted a permanent waiver of the right to arrest and recommit him to serve out the remainder of his term in the Indiana State Prison after his release from the Federal Prison, because of the violation of the terms and conditions of his parole.

The pertinent facts as alleged and proven are:

In September, 1944, appellant was sentenced by the Lake Criminal Court for the term of one to ten years in the Indiana State Prison. On March 22, 1949 he was granted a parole. On September 11, 1949 he was arrested in Calumet City, Illinois, and sentenced to the Cook County (Illinois) jail for drunkenness and reckless driving, where he was confined for a period of forty-two days.

Prior to being sentenced to the Cook County jail the Indiana parole agent located at Hammond, Indiana, was advised of appellant's arrest in Cook County, Illinois. This agent visited appellant in the city jail at Calumet City, Illinois. No action was taken at that time by the Indiana authorities to return appellant to the Indiana State Prison as a parole violator.

As a result of his arrest in Calumet City, appellant was charged in the United States District Court, Northern District of Indiana, Hammond Division, with violation of the Dyer Act[1] and on November 1, 1949, entered a plea of guilty to such charge.

On November 4, 1949, the Chief Probation Officer of the United States District Court, Northern District of Indiana, wrote the warden of the Indiana State Prison inquiring whether he would accept the return of ·appellant as a parole violator and permit him to serve any federal sentence which might be imposed upon him by the Federal District Court, concurrently with the remainder of the sentence which he might be required to serve in the Indiana State Prison as a parole violator. In reply to this request such probation officer was advised that the Indiana authorities felt that so long as the Federal government had actual custody of appellant and jurisdiction over him, they had no desire to proceed against him as a parole violator, and that they (the Indiana authorities) would not accept appellant as a Federal prisoner iri the Indiana State Prison so that he might serve his Federal sentence concurrently with the remainder of his sentence to which he was subject as a result of his parole violation.

The warden of the Indiana State Prison is prohibited by statute from accepting Federal prisoners. Acts 1897, ch. 142, §1, p. 218, being §13-267, ▇ Burns' 1942 Repl. Neither could the Federal District Court commit appellant to the Indiana State Prison, 18 U. S. C. A. §4082; *Mahoney* v. *Johnston* (1944), 9 Cir., 144 F. 2d 663, (Cert. denied, 324 U. S. 853, 65 S. Ct. 711, 89 L. Ed. 1413). It, therefore, appears at the outset that the actual custody of appel-

---

1. Dyer Act, 18 U.S.C.A. §2312.

lant was offered to the Indiana prison authorities only upon a condition which they could not legally accept.

Notwithstanding such report and the above statutory provisions, appellant was sentenced by the Federal District Court on December 13, 1949, for a term of four years and six months "to be served concurrently with the unexpired portion of defendant's term of imprisonment in the Indiana State Prison at Michigan City."

The warden of the Indiana State Prison refused to honor a commitment issued by the Federal District Court upon the judgment entered on December 13th, 1949, and on December 30, 1949 this judgment was modified to provide that the sentence thereby imposed upon appellant be served at a place to be designated by the Attorney General of the United States.

Upon his release from the Federal prison at Terre Haute, Indiana, appellant was arrested and returned to the actual custody of the warden of the Indiana State Prison upon a warrant issued by him on January 24, 1950.

Appellant contends that the failure of the proper Indiana authorities[2] to exercise their right to recommit him for violation of the terms of his parole when they were given an opportunity so to do was a permanent waiver of any further right to custody and jurisdiction of appellant as a parole violator.

*First:* Appellant's sole authority for support of this contention is an opinion of the Attorney General of Indiana, Op. Atty. Gen., 1944, p. 108. This opinion is in answer to six questions submitted by the Department of Public Welfare. Although appellant's brief does not point out specifically which of the six answers is applicable to the case at bar, we will assume, how-

2. In this case the warden of the Indiana State Prison.

ever, that he is relying upon the answer to number 4 as this question, unaccompanied by the statement of facts upon which it is based, seems closest to the one which is presently before us, and it is as follows:

"4. If the parolee was released to federal authorities in Indiana, to serve 90 days on an uncompleted federal sentence, would it be considered the same as a release to a foreign state and such release thereby terminate the right of the Indiana authorities to take over the supervision of such parolee after the release of the prisoner by the federal authorities?"

Since the same reasoning is used to arrive at the answer to this question as that which was employed in the answer to question number 1, question number 4 must be considered as being based upon the same factual situation. In the answer to question number 1, it is stated:

"The fact situation as propounded raises the question of whether the *executive authority* of the state in which a prisoner is under restraint may effectively waive any right to assert legal custody of that person." (Our italics.)

The cases relied upon by the Attorney General to sustain his opinion involve the executive authority of the state over the custody of persons held for the commission of crimes. None of the authorities cited in the opinion is based upon factual situations such as that in the case at bar.

No question of the waiver, by the executive of the state, of the custody of a prisoner by surrendering him to another state under an extradition warrant is involved in the case now before us.

The effect of the Attorney General's opinion was to hold that the Governor could waive the jurisdiction of a state over a fugitive or a prisoner on parole. As

we have already stated, the facts upon which the Attorney General's opinion is based are essentially different from those in the case at bar and neither such opinion nor the cases cited therein lend support to appellant's position here.

*Second:* The Governor of Indiana may, in the exercise of his power to grant pardons and reprieves, surrender a prisoner to another state or to the Federal government to pay the penalty for a crime committed in that State or against the Federal government, in a manner which would effectively waive any right to future custody or jurisdiction of such prisoner. Such action would, in effect, be a commutation of sentence amounting to the remaining time which the prisoner could be required to serve under his commitment in Indiana.

The Parole Board in Indiana has no power to pardon or to commute the sentence of any prisoner. Its sole power in this respect is confined to the granting of paroles, and this was granted by the legislature in order to give effect to, and assist in, the administration of the indeterminate sentence laws.

The Parole Board of the Indiana State Prison is authorized by statute[3] to grant paroles to inmates of the institution.

Section 13-248, Burns' 1942 Repl., provides that a parolee "remain while so on parole, in the legal custody and under the control of the agent and warden of the state prison from which he is so paroled *until the expiration of the maximum term* speci-

3. Acts 1897, ch. 143, §5, p. 219, being §13-248, Burns' 1942 Repl.;
Acts 1953, ch. 266, §28, p. 944, being §13-1528, Burns' 1942 Repl. (1953 Cum. Supp.) ;
Acts 1953, ch. 266, §1, p. 944, being §13-1501, Burns' 1942 Repl. (1953 Cum. Supp.) ;
Acts 1953, ch. 266, §27, p. 944, being §13-1527, Burns' 1942 Repl. (1953 Cum. Supp.).

fied in his sentence, as hereinbefore provided, or until his absolute discharge as hereinafter provided." (Our italics.)

The authority of the warden to recommit parole violators is provided by Acts 1897, ch. 143, §6, p. 219, being §13-249, Burns' 1942 Repl., and is as follows:

"If the agent and warden of the prison from which such prisoner was paroled, or said board or any member thereof, shall have reasonable cause to believe that the prisoner so on parole has violated his parole and has lapsed or is probably about to lapse into criminal ways or company, then such agent and warden or said board, or any member thereof, may issue his warrant for the retaking of such prisoner, *at any time* prior to the maximum period for which such prisoner might have been confined within the prison walls upon his sentence, which time shall be specified in such warrant." (Our italics.)

This statute authorizes the parties named to issue a warrant for the retaking of a prisoner who is believed to have violated his parole *at any time* until the expiration of the maximum term specified in his sentence. The issuance of such warrant is wholly within the discretion of such persons. The statute does not provide that they *shall,* upon reasonable cause shown, immediately issue a warrant for retaking a prisoner, but does provide that they *may* issue a warrant *at any time* prior to the maximum period for which such prisoner might have been confined. The rearrest of appellant herein was, therefore, a matter within the discretion of the proper officials of the Indiana State Prison.

The Supreme Court of Georgia was faced with the same question which is now before us in *Johnson* v. *Lowry, Sheriff* (1936), 183 Ga. 207, 188 S. E. 23, 147 A. L. R. 943 Anno. IV. While on parole from the

Alabama State Penitentiary Johnson was indicted by the Federal Court, plead guilty to the possession of a stolen automobile, and sentenced to the Federal penitentiary at Atlanta, Georgia. At the expiration of his term at Atlanta the State of Alabama requested the warden at Atlanta to hold Johnson in order that he might be returned to Alabama to serve the remainder of his sentence there as a parole violator.

Johnson, in that case, as does appellant here, claimed that in surrendering him to the Federal authorities the State of Alabama waived its claim to jurisdiction over him for the completion of his sentence as a parole violator.

The Supreme Court of Georgia, quoting from *Ponzi* v. *Fessenden* (1922), 258 U. S. 254, 260, 42 S. Ct. 309, 66 L. Ed. 607, 22 A. L. R. 879, said:

" 'One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. In re Andrews, 236 Fed. 300; United States v. Marrin, 227 Fed. 314. Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it. . . . There is no express authority authorizing the transfer of a Federal prisoner to a State court for such purposes. Yet we have no doubt that it exists and is to be exercised with the consent of the attorney-general. In that officer the power and discretion to practice the comity in such matters between the Federal and State courts is vested. . . . "The penitentiary is not a place of sanctuary; and an incarcerated convict ought not

to enjoy an immunity from trial merely because he is undergoing punishment on some earlier judgment of guilt." ' Ponzi v. Fessenden, 258 U. S. 254, 260, 261, 264 (42 Sup. Ct. 309, 66 L. ed. 607). The State of Alabama had the sovereign power to waive or pardon the convict, thus legally cancelling the unserved portion of his sentence. It could waive the immediate service and postpone such service until the convict could be tried by the United States court and, if convicted, serve any sentence imposed by that court. The decision on that question was one to be made by the State of Alabama. The State chose the latter, that is, to waive temporarily, and not to cancel, the unserved portion of the sentence. Under the principles ruled in the above-cited Ponzi case, and in *Kelly* v. *Mangum*, 145 Ga. 57 (88 S. E. 556), and *Bartlett* v. *Lowry*, 181 Ga. 526 (182 S. E. 850), the court did not err in denying the writ of habeas corpus and in remanding the petitioner to the custody of the sheriff.''

See also: *Hostettler* v. *Hudspeth* (1947), 163 Kan. 647, 184 P. 2d 994; *People ex rel. Pepe* v. *Ashworth* (1941), 31 N. Y. S. 2d 225, 147 A. L. R. 943 Anno. IV.

As a general rule the surrender of a parole convict to the authority of another jurisdiction for trial upon another criminal charge does not, as a matter of law, constitute a permanent waiver of the right to recommit such convict, because of a violation of the terms of his parole, to serve out the remainder of his term. *Jurczyszyn* v. *Mich. Parole Bd.* (1947), 316 Mich. 529, 540, 25 N. W. 2d 609 (cert. denied, 335 U. S. 834, 69 S. Ct. 23, 93 L. Ed. 387) ; *People ex rel. Pepe* v. *Ashworth* (1941), 31 N. Y. S. 2d 225, 227, 147 A. L. R. 943 Anno. IV, *supra; King* v. *Mount* (1943), 196 Ga. 461, 26 S. E. 2d 419.

The statute in this State is designed to follow the general rule. Section 13-251, Burns' 1942 Repl., Acts 1897, ch. 143, §8, p. 219, provides that whenever a

parole violator has been arrested by virtue of a warrant issued by the warden of a prison of which he is paroled, he shall be recommitted to the prison to serve a period of time "equal to the unexpired maximum term of sentence of such prisoner, at the time such delinquency is declared, unless sooner released on parole or absolutely discharged[4] by the board of commissioners of paroled prisoners."

The Parole Board has no power to suspend or commute the unexpired portion of the maximum sentence of appellant. It cannot suspend it except by the granting of an additional parole or an absolute discharge as provided by §13-251, *supra*. Neither an additional parole nor an absolute discharge can be granted simply by the failure of the warden to accept appellant into the State prison for the purpose of serving a Federal sentence, or by any other act or acts of omission.

A parole or an absolute discharge can be granted only by an affirmative action of the Board of Parole. No such action appears in the record before us.

*Third:* Appellant while at liberty on parole was not in actual custody of the warden of the Indiana State Prison,[5] and during such time he could be arrested and convicted for the commission of another offense whether committed in the same or another jurisdiction. 116 A. L. R. 811 Anno. *Cozart* v. *Wolf* (1916), 185 Ind. 505, 511, 112 N. E. 241.

If the Indiana authorities did not desire to retain their custody of appellant and were willing to suspend it temporarily while he served the sentence which he had received in the Federal court, it was a right which resided wholly in them and

4. See §13-252, Burns' 1942 Repl., for circumstances under which the Board may grant an absolute discharge.
5. See: *Cozart* v. *Wolf* (1916), 185 Ind. 505, 112 N. E. 241.

was not one personal to appellant which he could enforce or complain because it was not exercised. *Cato* v. *Smith* (1939), 9 Cir., 104 F. 2d 885, 886; *United States ex rel. Demarois* v. *Farrell* (1937), 8 Cir., 87 F. 2d 957; *In re Andrews* (1916), D. C., 236 F. 300; *United States* v. *Chairman of Board of Parole* (1948), 81 F. Supp. 592, 595, (aff. 3 Cir., 175 F. 2d 780); *People* v. *Nokes* (1938), 25 Cal. App. 2d 259, 261, 77 P. 2d 243. Cf: *Cozart* v. *Wolf* (1916), 185 Ind. 505, 510, 112 N. E. 241, *supra*.

*Fourth:* To hold that the Indiana prison authorities waived their jurisdiction of appellant by permitting the Federal authorities to take custody of him for service of the Federal sentence, would give such waiver the effect of a commutation of sentence or pardon. This, neither the warden nor the Parole Board has the power to grant, nor does this court have the power to confer such authority. This power is specifically granted to the Governor of Indiana by the Constitution[6] and rests exclusively in him. *Butler* v. *State* (1884), 97 Ind. 373.

For the reasons above stated the taking of appellant by the Federal authorities for punishment for the commission of a Federal offense while on parole from the Indiana State Prison did not, under the facts as they appear from the record, constitute a permanent waiver of the right of Indiana to recommit him to serve out the remainder of his term in the Indiana State Prison because of the violation of the terms of his parole.

The judgment of the trial court is, therefore, affirmed.

Judgment affirmed.

Flanagan, C. J., and Draper, J., concur.

---

6. Article 5, §17, Indiana Constitution.

Emmert, J., dissents with opinion in which Gilkison, J., concurs.

## DISSENTING OPINION

EMMERT, J.—This appeal is now moot. Gilchrist's sentence of from one to ten years for grand larceny was entered September 22, 1944, and under this judgment the maximum term expired September 22, 1954. Section 13-251, Burns' 1942 Replacement, provides after a delinquency is declared the prisoner shall be "imprisoned in said prison for a period equal to the unexpired maximum term of sentence of such prisoner, at the time such delinquency is declared, unless sooner released on parole or absolutely discharged by the board of commissioners of paroled prisoners." Section 13-255, Burns' 1942 Replacement, provides, "That the maximum time for which said prisoners may be imprisoned under said Indeterminate Sentence Law shall not exceed the full term for which he was sentenced originally." His imprisonment in the Cook County jail and later in the federal prison during the ten year period would not toll the running of this statute. To permit the executive authority by revocation of a parole to toll the running of the maximum sentence would be to vest in it judicial authority to modify a judgment in violation of Article 3 of the Constitution. *Dowd* v. *Basham* (1954), 233 Ind. 207, 116 N. E. 2d 632. However, if the appeal is to be decided it should be consistent with the legislative intent expressed in our statutes on parole.

On September 11, 1949, appellant was arrested in Calumet City, Illinois, for operating a motor vehicle while under the influence of intoxicating liquor. The next day James A. Doorley, a parole officer of this

state, visited appellant in jail in Illinois, and was advised by appellant of all the facts concerning his delinquency. On September 14, 1949, appellant was tried on the Illinois charge, given a fine of $200.00 and costs, and because he became in default on the payment of the fine he served 42 days in the Cook County jail. On October 24, 1949, appellant was indicted by the federal grand jury for violation of the Dyer Act. During all this time Indiana made no effort to issue any warrant for his arrest as a parole violator and no parole warrant was issued for appellant until January 24, 1950. On February 24, 1950, he was declared delinquent.

Section 13-251, Burns' 1942 Replacement, provides as follows:

"At the next meeting of the board of commissioners of paroled prisoners, held at such prison, after the issuing of a warrant for the retaking of any paroled prisoner, said board shall be notified thereof. If said prisoner shall have then been returned to said prison, he shall be given an opportunity to appear before said board, and the said board may, after such opportunity has been given, or in case said prisoner has not yet been returned, declare said prisoner to be delinquent, and he shall, whenever arrested by virtue of such warrant, be thereafter imprisoned in said prison for a period equal to the unexpired maximum term of sentence of such prisoner, at the time such delinquency is declared, unless sooner released on parole or absolutely discharged by the board of commissioners of paroled prisoners." (Acts 1897, ch. 143, §8, p. 219.)

The statutory provisions for parole should be construed in favor of the prisoner and against a restriction of liberty. *Dowd, Warden* v. *Johnston* (1943), 221 Ind. 398, 47 N. E. 2d 976. The Indiana authorities seek to exercise a statutory right which is limited by our own

Constitution, and what other states may do under their statutes and Constitutions cannot affect the rights and duties of the parole authorities and the prisoners in this state. An act of delinquency may be waived by the failure to issue a warrant, or it may be waived after the warrant is issued and the matter comes on for hearing. But after it is once waived there is nothing in the statute that authorizes a later revocation for the same act or omission. The whole statutory scheme shows that parole authorities should exercise diligence after being apprised of an act or omission which might be cause for revoking the parole.

Our parole administration is a part of the administration of justice, which §12 of Article 1 commands "shall be administered . . . speedily, and without delay." There was nothing done speedily, and without delay in this record. Unless we require the parole authorities to act promptly upon discovery of an act or omission which is a cause for revocation of parole, shocking results will follow. A prisoner could be convicted of stealing a shotgun and be sentenced from one to ten years. He could be paroled at the end of one year, and if within six months after the parole began he committed an assault and battery, of which the parole authorities had knowledge, they could wait until nine years of his term had expired before issuing the warrant and holding the hearing, and then revoke his parole and imprison him for another year for an act he committed eight years before.

I cannot agree to a construction of the statute which opens the door for our parole officers and agents to use the statutes as an instrument of terror, oppression, or even extortion.

Gilkison, J., concurs in this dissent.

NOTE.—Reported in 122 N. E. 2d 93.