OVERLADE, WARDEN, ETC. *v.* WELLS.

[No. 29,201. Filed July 1, 1955.]

*Edwin K. Steers,* Attorney General, and *Frank E. Spencer,* Deputy Attorney General, for appellant.

*James C. Cooper,* Public Defender, and *Perry W. Cross,* Deputy Public Defender, for appellee.

BOBBITT, J.—This appeal is from a judgment granting a writ of habeas corpus and releasing appellee from custody of the Warden of the Indiana State Prison.

Appellant assigns as error the overruling of his motion for a new trial.

The evidence was by stipulation of the parties and a summary thereof is necessary to a full understanding of the questions presented.

Appellee was sentenced on January 12, 1940, by the Gibson Circuit Court to serve a term of 2 to 14 years in the Indiana State Prison for the crime of forgery.

He was released on parole on January 12, 1943. On May 29, 1946 appellee was arrested in St. Louis, Missouri, where he was on parole under the supervision of the Board of Probation and Parole of the State of Missouri by request of the Supervisor of Paroles of the Department of Public Welfare of the State of Indiana. On June 1, 1946, the Missouri authorities notified the Indiana Supervisor of Paroles of appellee's arrest. Subsequently, on June 18, 1946, a parole violation warrant was executed by the Warden of the Indiana State Prison and forwarded to the Director of Probation and Parole in Jefferson City, Missouri. In a letter covering the transmittal of the warrant the Supervisor of Paroles of Indiana said:

"Attached is Parole Violation Warrant No. 382 to be filed against Wells as our detainer. We urge that he be prosecuted in your state; however, if he is not convicted, please hold him for us pending a decision of the Board of Trustees of the Indiana State Prison in his case."

On June 21, 1946, the Board of Parole for the Indiana State Prison, at its regular monthly meeting, declared appellee, Wells, to be delinquent. On October 7, 1946, appellee was sentenced for a term of one year in the City Workhouse in St. Louis, Missouri, and at the end of this term, on October 7, 1947, he was returned and imprisoned in the Indiana State Prison. He was again released on parole on June 16, 1950.

On or about March 1, 1951, appellee was arrested in Mt. Carmel, Illinois, on a charge of forgery. He waived preliminary hearing and informed the Justice that he was on parole in Indiana. On the next day after the preliminary hearing the Sheriff of Wabash County, Illinois, called the Indiana State Prison and informed "the person on the telephone" that the Wabash County

State's Attorney had told him to inform the Indiana authorities that Illinois would not prosecute appellee if Indiana would take him back for parole violation. This statement was later repeated to the Indiana District Parole Officer having charge of appellee, in a telephone conversation with the Sheriff. The parole officer replied: "We'd rather you would prosecute Wells in Illinois and we will send you our detainer. You can send us a report of the sentence." Appellee was, upon conviction, sentenced to a term of one to fourteen years in the Southern Illinois Penitentiary.

Also, on March 2, 1951, the Acting Director of the Division of Corrections of Indiana wrote the Sheriff of Wabash County, at Mt. Carmel, Illinois, advising him that the Division had been informed by the District Parole Officer of appellee's arrest in Illinois and requesting a report covering the circumstances of the case, and asking that the Division be kept advised as to the outcome. The letter also stated:

"We are attaching our parole violation warrant No. 961, which we would appreciate your filing as a detainer. We do not want this to interfere with his prosecution there. We are also attaching triplicate copies of our waiver of extradition, which we would appreciate your attempting to get him to sign. If he will sign these, please return two copies to this office properly executed.

"Please acknowledge receipt of the warrant and, in the event he is convicted, advise us the institution to which he is sent and see that our warrant follows him."

The Department of Public Welfare was subsequently notified that appellee had been delivered to the Southern Illinois Penitentiary on April 6, 1951, and on April 12, 1951, the Acting Director, Division of Corrections of the Department of Public Welfare of Indiana wrote the Warden of the Illinois Penitentiary as follows:

"We are attaching our parole violation warrant No. 961, which we would appreciate your filing as a detainer against him. Please acknowledge receipt of this warrant and mark your records to notify us approximately 60 days prior to his eligible release date so that a decision can be made relative to his return to our institution."

After the issuance of a warrant by the Warden of the Indiana State Prison on March 2, 1951, the Board of Paroles of such prison, at its regular monthly meeting, on March 16, 1951, again declared appellee to be delinquent.

The record further discloses that upon his release from the City Workhouse in Missouri appellee was arrested and returned to the Indiana State Prison on October 7, 1947, at which time the termination date of his unexpired maximum term imposed by the Gibson Circuit Court was extended for a period of one year, three months and sixteen days from and after January 12, 1954, because the running of his sentence was tolled as provided by the Acts of 1897, ch. 143, §8, p. 219, being §13-251, Burns' 1942 Replacement.

After appellee's release from the Illinois State Penitentiary he was arrested and returned to the Indiana State Prison on October 22, 1953, at which time the termination date of the unexpired maximum term of his sentence was extended for two years, seven months and six days from and after April 28, 1955, because of his second parole violation, thus extending petitioner's-appelle's term of service in the Indiana State Prison to and including December 4, 1957, as provided by §13-251, *supra*.

Two questions are presented for our consideration.

*First:* Did the Supervisor of Paroles and the Acting Director of the Division of Corrections of the Welfare

Department of Indiana by their acts and failure to act, as hereinabove set out in the summary of the evidence, permanently waive any further right of the State of Indiana to recommit appellee to the Indiana State Prison for violation of his parole?

A similar question was before this court in *Gilchrist* v. *Overlade* (1954), 233 Ind. 569, 122 N. E. 2d 93. There the appellant, Gilchrist, while on parole from the Indiana State Prison was arrested and convicted by the Federal District Court for violation of the Dyer Act. Upon conviction the Chief Probation Officer of the District Court wrote the Warden of the State Prison to inquire whether the Warden would accept the return of Gilchrist as a parole violator and permit him to serve his Federal term concurrently with the remainder of the sentence he would be required to serve by reason of the violation of his parole. The parole officer was advised by the Indiana authorities that they had no desire to proceed against Gilchrist as a parole violator so long as the Federal Government had actual custody and jurisdiction of the prisoner.

In the Gilchrist case, at page 575 of 233 Ind., and page 96 of 122 N. E. 2d, we said:

"The Governor of Indiana may, in the exercise of his power to grant pardons and reprieves, surrender a prisoner to another state or to the Federal government to pay the penalty for a crime committed in that State or against the Federal government, in a manner which would effectively waive any right to future custody or jurisdiction of such prisoner. Such action would, in effect, be a commutation of sentence amounting to the remaining time which the prisoner could be required to serve under his commitment in Indiana.

"The Parole Board in Indiana has no power to pardon or to commute the sentence of any prisoner."

If the Parole Board has no such power it follows that, for the same reasons, the Department of Public Welfare, nor any of its employees, has the power to grant pardons or commute the sentence of any prisoner.

The surrender of appellee to the authorities of Missouri and Illinois upon the criminal charges there pending against him did not constitute a waiver of the right to recommit him to the Indiana State Prison to serve out the time imposed by the statute[1] for the violation of the terms of his parole. *Gilchrist* v. *Overlade* (1954), 233 Ind. 569, 122 N. E. 2d 93, 98, *supra.*

If the Indiana authorities did not desire to retain their custody of appellee and were willing to suspend it temporarily while he served the sentences which he had received in Missouri and Illinois, it was a right which resided wholly in them, and was not one personal to appellee which he could enforce or complain because it was not exercised. *Gilchrist* v. *Overlade, supra,* and cases there cited. See also: *State ex rel. Smith* v. *Dowd* (1955), 234 Ind. 152, 124 N. E. 2d 208.

*Second:* Could appellee be held in the Indiana State Prison for a period equal to the unexpired maximum term of his sentence remaining at the time his delinquencies were declared, i.e., until December 4, 1957, and longer than January 12, 1954, at which time his maximum term would have been served except for his delinquencies while on parole?

Acts 1897, ch. 143, §8, p. 219, being §13-251, Burns' 1942 Replacement, *supra,* provides:

"At the next meeting of the board of commissioners of paroled prisoners, held at such prison, after the issuing of a warrant for the retaking of

[1]. Acts 1897, ch. 143, §8, p. 219, being §13-251, Burns' 1942 Replacement.

any paroled prisoner, said board shall be notified thereof. If said prisoner shall have then been returned to said prison, he shall be given an opportunity to appear before said board, and the said board may, after such opportunity has been given, or in case said prisoner has not yet been returned, declare said prisoner to be delinquent, and he shall, *whenever arrested by virtue of such warrant, be thereafter imprisoned in said prison for a period equal to the unexpired maximum term of sentence of such prisoner, at the time such delinquency is declared,* unless sooner released on parole or absolutely discharged by the board of commissioners of paroled prisoners." (Our italics.)

In construing the above section, words and phrases must be given their plain ordinary and usual meaning, unless a contrary purpose is clearly shown by the statute itself. *R. L. Shirmeyer, Inc.* v. *Ind. Revenue Bd.* (1951), 229 Ind. 586, 591, 99 N. E. 2d 847; *Porter et al.* v. *State ex rel. Hays* (1935), 208 Ind. 410, 413, 196 N. E. 238. No such purpose is here shown.

Section 13-251, *supra,* being a part of the parole acts, must be read into appellee's parole and considered as a condition thereof in the same manner as if the provisions of the statute were recited in the certificate of parole.

Appellee was first declared delinquent on June 21, 1946, and was thereafter, because of such delinquency, arrested and imprisoned on October 7, 1947.

He was again paroled and was subsequently declared delinquent a second time on March 16, 1951. For this delinquency he was arrested and returned to the Indiana State Prison on October 22, 1953.

Section 13-251, *supra,* operates automatically, under certain specified conditions, to toll or suspend the running of a prisoner's sentence. The invoking of the statute rests wholly with the prisoner. He, and he alone, must furnish the conditions or per-

form the acts which result in the operation of the statute.

In the case at bar, appellee, by the violation of his parole, started in operation the machinery which tolled the running of his sentence for the period from June 21, 1946 to October 7, 1947, a total of 1 year, 3 months and 16 days, and from March 16, 1951 to October 22, 1953, a total of 2 years, 7 months and 6 days. He cannot now complain of the results of his own acts.

The parole authorized by our statutes[2] does not toll or suspend the running of the sentence, nor does it operate to shorten the term. While on parole the prisoner remains in the legal custody of the parole agent and warden of the prison from which he is paroled until the expiration of the maximum term specified in his sentence or until discharged as provided by law. Acts 1897, ch. 143, §5, p. 219, being §13-248, Burns' 1942 Replacement.

While a parole is an amelioration of punishment, *Anderson* v. *Corall* (1923), 263 U. S. 193, 68 L. Ed. 247, 44 S. Ct. 43, it is, in legal effect, still imprisonment. *Drinkall* v. *Spiegel, Sheriff* (1896), 68 Conn. 441, 36 Atl. 830, 36 L. R. A. 486. The sentence and service while on parole are subject to the provisions of §13-251, *supra*, that whenever a parolee has been lawfully declared delinquent he shall, whenever arrested pursuant to a warrant issued for his retaking, be imprisoned in the institution from which he was paroled for a period equal to the unexpired maximum term of his sentence at the time such delinquency is declared, unless he is sooner released by some lawful authority.

If appellee had not violated his parole and had not

2. Acts 1897, ch. 143, §5, p. 219, being §13-248, Burns' 1942 Replacement.

been regularly declared delinquent, his sentence imposed by the Gibson Circuit Court would have expired ■ as though he were serving inside the State Prison. However, under our statute,[3] when he violated the terms of his parole and was subsequently declared delinquent, only the time served in the prison plus the time served on parole to the time at which he was declared a delinquent counts, and that time between the date on which he was declared delinquent and the date he was returned to prison is excluded and must be considered a part of his unexpired maximum term.

In each instance, from the date on which he was declared delinquent until appellee was returned to the Indiana State Prison, the running of his sentence ■ was tolled, *Nave* v. *Bell* (1950), 6 Cir., 180 F. 2d 198; *Zerbst* v. *Kidwell* (1938), 304 U. S. 359, 82 L. Ed. 1399, 58 S. Ct. 872, 116 A. L. R. 808; See also: Annotation. 116 A. L. R. 811, and was, in legal effect, as much suspended as though he had escaped. *Anderson* v. *Corall* (1923), 263 U. S. 193, 68 L. Ed. 247, 44 S. Ct. 43, *supra; Zerbst* v. *Kidwell* (1938), 304 U. S. 359, 82 L. Ed. 1399, 58 S. Ct. 872, 116 A. L. R. 808, *supra; Platek* v. *Aderhold* (1934), 5 Cir., 73 F. 2d 173, 175; *Drinkall* v. *Spiegel, Sheriff* (1896), 68 Conn. 441, 36 Atl. 830, 36 L. R. A. 486, *supra.*

Appellee herein was sentenced to serve a maximum of 14 years in the Indiana State Prison. Since service of his sentence was interrupted on two occasions by parole violations the full term has not been completed. *Zerbst* v. *Kidwell* (1938), 304 U. S. 359, 82 L. Ed. 1399, 58 S. Ct. 872, 116 A. L. R. 808, 810, *supra.*

Since appellee's own misconduct resulting in his being twice declared delinquent has prevented the completion

3. Section 13-251, *supra.*

of his original sentence, it follows that the authority of the Board of Parole for Indiana State Prison over appellee has been correspondingly extended and continued.

Appellee's delinquencies not only tolled and suspended the running of his sentence but rendered him liable to arrest and service of the full maximum sentence even though the time may have passed at which, but for his delinquencies while on parole, it would have been completed. *Platek* v. *Aderhold* (1934), 5 Cir., 73 F. 2d 173, 175, *supra*.

The time which appellee served in the City Workhouse in Missouri was for the commission of an offense against that State. Likewise, the time which he served in the State Penitentiary in Illinois was for the commission of an offense in that State. The time which he has served and is serving after his two arrests upon warrants issued by the Warden of the State Prison and after his being declared delinquent, is for violation of the terms of his parole. He cannot pay this debt to the State of Indiana by serving time in prisons in Missouri or Illinois for crimes committed in those states.

From the date on which he was first declared delinquent, i.e., June 21, 1946, appellee owed the State of Indiana service for the remainder of his maximum sentence amounting to 7 years, 6 months and 21 days. If appellee had not violated his parole his term would have ended on January 12, 1954. However, as the result of his crime in the State of Missouri he was not returned to the actual custody of the Warden of the Indiana State Prison until October 7, 1947, at which time his sentence again began to run and he resumed service of the maximum term of his sentence which could be satisfied only by actual service unless remitted by a duly constituted authority. *Ex*

*parte McBride* (1953), 115 Cal. App. 2d 538, 254 P. 2d 117; *People* v. *Dixon* (1944), 387 Ill. 420, 56 N. E. 2d 816.

Thus, by operation of statute,[4] he was required to serve the balance of his term—7 years, 6 months and 21 days—after his returned to prison on October 7, 1947.

Applying the same reasoning to his second delinquency following his arrest in the State of Illinois, appellee's term of service in the Indiana State Prison was, by his own act and the operation of the statute, extended to December 4, 1957.

Appellee could not satisfy and discharge his debt to the State of Indiana by serving his sentence imposed by another jurisdiction for a crime committed there while on parole from the Indiana State Prison.

The unserved portion of his maximum sentence remaining at the time he was declared delinquent could be legally satisfied in only three ways, (1) by actual service within the confines of the State Prison; (2) by pardon or commutation by the Governor; or (3) by appropriate action of the Board of Parole for Indiana State Prison.

For the reasons above stated, the judgment releasing appellee is contrary to law.

The judgment is reversed and the cause remanded with instructions to the trial court to deny the writ.

Arterburn and Landis, JJ., concur.

Achor, J., concurs with opinion.

Emmert, C. J., dissents with opinion.

## CONCURRING OPINION

ACHOR, J.—I concur in the result of the majority opinion, but it occurs to me that one issue is raised

---

4. Section 13-251, *supra.*

which deserves further consideration. I have discussed that issue in this concurring opinion.

It is contended that the failure of the State of Indiana to retake the parolee when made available by the states of Missouri and Illinois constituted a waiver of his delinquency during the period of his imprisonment by those states.

In support of this contention attention is called to the fact that, if a parolee can be apprehended within the State of Indiana, it is the manifest intention of the parole statute (Acts 1897, ch. 143, §§5, 6, 7 and 8, page 219, being §§13-248, 13-249, 13-250, 13-251, Burns' 1942 Repl.) that, on violation of his parole, the parolee must be returned to the prison if it is possible to do so. Therefore, it necessarily follows that a delinquency can be declared by the parole board only in event the return of the prisoner is not possible. Upon this subject, §13-250, *supra,* expressly provides: "Any officer of said prison, or any other officer authorized to serve criminal process *within this state* to whom such warrant shall be delivered is authorized and *required* to execute said warrant by taking said prisoner and returning him to said prison." (Our italics.)

However, the intention of the legislature with regard to the taking of a parole violator charged with a criminal offense *in another state* before declaring a delinquency, presents an entirely different situation. If a parolee is charged with a second offense committed while on parole in this state, it is contemplated by statute that he be presently tried for the second offense and if found guilty that he serve time for such second offense in addition to and after the first sentence has been served (Acts 1947, ch. 61, §1, p. 205, being §9-2250, Burns' 1942 Repl. (1953 Supp.)). The statute seems to demonstrate a clear legislative intention that a parolee

should not be permitted to assert or use the fact of his parole as a means of avoiding separate and additional punishment for the subsequent second offense. It would seem that such intention would prevail whether such subsequent offense is committed in the State of Indiana *or in another state.*

Bearing in mind the intention of the legislature as above expressed, the problem which confronts the parole board is essentially as follows: The parole board is vested with the authority and is charged with the responsibility of considering the record of each prisoner as related to his eligibility for parole. If a parolee commits a crime in this state, the parole board has no responsibility with regard to a conviction for that offense. This is true because the parolee is in the continuing jurisdiction of the state and can be prosecuted by the proper authorities as the processes of our courts permit. However, such procedure is not possible if the crime is committed in another state because there is no such continuing custody as between the officers of Indiana and those of independently sovereign states. If a parolee is to be charged with a second offense, committed in another state, his constitutional guarantees require that he be tried "speedily and without delay." This means that he must be tried in that state before being returned to Indiana. This is necessary to both the state and the accused in order that witnesses can be obtained and they can testify while their recollection of the case is clear. If he is convicted of that offense, it follows that he must first serve his sentence in that state before being returned to the State of Indiana to complete his sentence for which he was on parole.

The above procedure differs from that provided in §9-2250, *supra,* only that the parolee serves time for the second offense in the other state before completing

his sentence for the first offense in this state. The difference should not, however, serve to avoid punishment for the second offense. In the case of *Dowd* v. *Basham* (1954), 233 Ind. 207, 116 N. E. 2d 632, 635, it was stated that sentence for the second offense is made "without reference to the time when it shall be executed."

If a parolee commits a crime *in another state* and he is offered by that state to the parole board of Indiana as a parole violator, the circumstances of the case make it the duty and responsibility of the board to determine whether or not the record of the parolee justifies his return without permitting him to also pay the penalty for his second offense committed in that state If, under the record, the parole board determines that the parolee should be subjected to trial for the crime committed by him *in another state,* we cannot say that such action constitutes a waiver of its right to declare a delinquency during the period of parolee's imprisonment for the second crime. Rather, in taking this action, the board has exercised its responsibility as authorized by the statute (§13-251). The situation with which the board was confronted was brought about by the parolee's own wrongdoing and I find no basis for challenging the board's exercise of discretion in the matter.

### DISSENTING OPINION

EMMERT, C. J.—The maximum sentence of the judgment entered by the Gibson Circuit Court on January 12, 1940, expired by its specific terms at the end of fourteen (14) years, to-wit: January 12, 1954. Appellee never escaped, and unless this court can find some statute which was in force at the time the judgment was pronounced that extended the term by operation of law, appellee's term could not be changed or modified by

any executive or administrative agency of the state. "It is only by virtue of the judgment of a court of competent jurisdiction that a citizen can be condemned to imprisonment, and when the time expires for which the sentence runs, as given in the judgment, the prisoner is entitled to his discharge." *Woodward* v. *Murdock* (1890), 124 Ind. 439, 444, 445, 24 N. E. 1047.

Since my dissent in *Gilchrist* v. *Overlade* (1954), 233 Ind. 569, 122 N. E. 2d 93, 99, in which Judge Gilkison concurred, additional research has fortified our position as to the proper construction of the statutes involved. The opinions of other jurisdictions relied on to extend the sentence here are based on different statutes which permit an extension by operation of law of the maximum term of the judgment.

Like all penal statutes, the parole statutes are to be construed in favor of the citizen and against a restriction of liberty. *Dowd, Warden* v. *Johnston* (1943), 221 Ind. 398, 47 N. E. 2d 976. Chapter 143 of the 1897 Acts provides the causes and procedure for parole and revocation. Section 5 of the Act, (§13-248, Burns' 1942 Replacement) provides the parole shall be "until the expiration of the maximum term specified in his sentence . . . ." Section 6 (§13-249, Burns' 1942 Replacement) authorizes the issuance of the warrant "at any time prior to the maximum period for which such prisoner might have been confined within the prison walls upon his sentence . . . ." Section 8 of the Act (§13-251, Burns' 1942 Replacement) states that the board may "declare said prisoner to be delinquent, and he shall, whenever arrested by virtue of such warrant, be thereafter imprisoned in said prison for a period equal to the unexpired maximum term of sentence of such prisoner, at the time such delinquency is declared . . . ." There is not a word in any of these sections

which countenances a construction that the board could order the prisoner held beyond the end of the maximum term of the judgment. But if there could be any doubt of this, two years later the General Assembly made it doubly clear the maximum term of the judgment was the end of the imprisonment by the enactment of Chapter 113 of the 1899 Acts (§13-255, Burns' 1942 Replacement), which provided:

> "That the maximum time for which said prisoners may be imprisoned under said Indeterminate Sentence Law shall not exceed the full term for which he was sentenced originally."

This subsequent act was not noticed in the *Gilchrist* case, nor in the majority opinion on the appeal at bar.

With this latter act still in full force and effect, how can it be reasoned that a statutory board has authority to change the terms of a judgment. "Over and over again this court has held that public officers in Indiana exercise but delegated powers—'naked powers' they have been called. Even constitutional officers have been held to this rule of delegated powers. *Branham* v. *Lange* (1861), 16 Ind. 497; *Matlock* v. *Strange* (1856), 8 Ind. 57. . . . The decisions of this court have always indicated a strict adherence to the rule that public officers exercise only delegated authority." *State ex rel.* v. *Home Brewing Co.* (1914), 182 Ind. 75, 91, 92, 105 N. E. 909. The parole board is statutory only, and as was said of the Public Service Commission, it "derives its power and authority solely from the statute, and unless a grant of power and authority can be found in the statute it must be concluded that there is none." *Chicago & E. I. R. Co.* v. *Public Service Comm.* (1943), 221 Ind. 592, 594, 49 N. E. 2d 341.

The federal cases are based on the federal statutes which are entirely different as to the maximum term.

Title 18, §4205, U.S.C.A., commands that, "The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the prisoner was on parole shall not diminish the time he was sentenced to serve." An earlier act noted in *Anderson* v. *Corall* (1923), 263 U. S. 193, 44 S. Ct. 43, 68 L. Ed. 247, stated, "If such order or parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced."[1]

This court ought to put a stop to the parole authorities of this state playing cat and mouse with these prisoners.

---

1. "When any paroled prisoner shall be rearrested on order of said Commission for violation of the conditions of his parole, or otherwise, he may be required by said Commission to serve the remainder of his original sentence; time paroled may or may not be considered or calculated as a part of the original sentence, in the discretion of the Commission." (Acts 1908, pp. 1115, 1116.) Section 77-505 Georgia Code of 1933.

"A prisoner violating the provisions of his parole and for whose return a warrant has been issued by the said director shall, after the issuance of such warrant be treated as an escaped prisoner owing service to the state, and shall be liable, when arrested, to serve out the unexpired portion of his maximum imprisonment, and the time from the date of his declared delinquency to the date of his arrest shall not be counted as any part or portion of the time to be served." Section 791.36, Michigan Compiled Laws, 1948.

"From and after the suspension or revocation of the parole of any prisoner and until his return to custody he shall be deemed an escapee and fugitive from justice and no part of the time during which he is an escapee and fugitive from justice shall be a part of his term." Section 3064, Penal Code of California of 1949.

"If any prisoner shall violate the conditions of his parole or release as fixed by the prison board, he shall be declared delinquent, and shall thereafter be treated as an escaped prisoner owing service to the state, and shall be liable, when arrested, to serve out the unexpired term of his maximum possible imprisonment, and the time from the date of his declared delinquency to the date of his arrest shall not be counted as any portion or part of time served; . . . ." Section 62-1528, General Statutes of Kansas (Anno.) 1949.

When a paroled prisoner commits an act or omission that is a violation of his parole, they ought not be permitted to stand by and refuse to act promptly to rearrest the prisoner or declare the delinquency. Our Constitution commands that, "Justice shall be admininstered . . . speedily and without delay." This is self-executing, and it is idle to contend that our parole system is not a part of the administration of justice. Parole officers are not judges or prosecuting attorneys, and they cannot institute prosecutions or enter judgments. They have a constitutional duty to act promptly and rearrest a delinquent prisoner by any lawful means. The evidence discloses they did not in this case. Prisoners are not common law outlaws, and they are still entitled to the protection of our Constitution.

In this case rhetorical paragraph No. 4 of the complaint for the writ alleged:

> "Petitioner further avers that on the . . . . . . . . day of February, 1951, petitioner was arrested in Mt. Carmel, Wabash County, Illinois, charged with issuing fraudulent checks and when arraigned before Circuit Court Judge B. W. Eovaldi petitioner informed the said judge that he was on parole from the Indiana State Prison; that the said Judge advised Sheriff M. M. Mobley of Wabash County, Illinois to contact the petitioner's parole officer, Joe Welton, and to advise said parole officer that if the Indiana authorities would accept this petitioner, the Illinois authorities would turn the petitioner over to the Indiana authorities as a parole violator. Petitioner further avers that the Indiana parole authorities by A. J. Cooley, Assistant Supervisor of Parole, Department of Public Welfare, State of Indiana, advised Sheriff Mobley of Wabash County, Illinois that they did not wish his return and recommended his prosecution by the Illinois authorities. . . ."

This was not denied by the return and stands admitted of record by the pleadings.

This is the same sort of a parole picture we had in *Gilchrist* v. *Overlade* (1954), 233 Ind. 569, 122 N. E. 2d 93, *supra*. The provisions of Chapter 143 of the 1897 Acts do not supersede the provisions of our Constitution. It is my opinion that the state may waive its right to rearrest a parolee under the statutory terms, but assuming the statute does not authorize a waiver, the statute cannot eliminate the constitutional mandate that justice be administered speedily and without delay, and that the penal code shall be based on reformation and not vindictive justice. Sections 12 and 18 of Art. I, Constitution of Indiana. When a constitutional mandate is violated, the absence of a specific statutory provision for waiver of the act or omission cannot make the act or omission constitutional, and the Constitution by its superior force prohibits the state and its agents from depriving the individual of such rights, which are placed above and beyond the power of any legislature to abolish or impair.

NOTE.—Reported in 127 N. E. 2d 686.